**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:26-cv-00015 (SLS) |
| THE NRA FOUNDATION, INC., *sued as* NRA FOUNDATION, INC. | |
| *Defendant*. | |

**DEFENDANT THE NRA FOUNDATION, INC.'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant The NRA Foundation, Inc.[1] ("Foundation"), through undersigned counsel, respectfully asks this Court to dismiss this entire action with prejudice. In support of this Motion, the Foundation relies on the accompanying Memorandum of Points and Authority in Support of Defendant The NRA Foundation, Inc.'s Motion to Dismiss Plaintiff's Complaint and the attached exhibits, which are appropriate for this Court's review under (1) Rule 12(b)(1) because the Rule permits the Court to look beyond the pleadings, and (2) Rule 12(b)(6) because the attached documents are integral to and incorporated in the Complaint and/or subject to judicial notice under Rule 201 of the Federal Rules of Evidence and controlling law in this Circuit.

As a threshold matter, this Court lacks subject matter jurisdiction to adjudicate several of the claims asserted by Plaintiff National Rifle Association of America, Inc. ("NRA"). Specifically, this Court lacks subject matter jurisdiction over ***Count VI*** for alleged third-party beneficiary and

---

[1]    The Defendant's legal name is "The NRA Foundation, Inc."

settlor breach of trust because the Foundation is not a trust and, regardless, the NRA does not fall within any of the limited exceptions to the general rule that **only** the Attorney General has standing to enforce the terms of a charitable trust. The NRA similarly lacks standing for **Counts X and XI** for alleged violations of the D.C. Nonprofit Corporations Act because the NRA is, again, not the Attorney General, which is tasked with enforcing the Act for the public good, and the NRA is not among the specifically enumerated private entities that have standing to assert claims under the Act. In addition, the NRA lacks standing to assert **Counts V, VII, VIII, and IX**, all of which sound in contract, because the NRA's allegation that the Foundation has been and intends to continue providing restricted grants to the NRA according to their express terms forecloses any injury-in-fact sufficient to establish Article III standing.

Accordingly, **Counts V–XI** should be dismissed with prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Separately, **Counts I–IX** fail and should be dismissed with prejudice under Rule 12(b)(6) because the NRA has not alleged facts to establish the required elements of each claim, and the facts that the NRA has alleged demonstrate that amendment would be futile. Beginning again with **Count VI** for alleged third-party beneficiary and settlor breach of trust, the claim is fatally flawed because the NRA has not identified any trust—as the Foundation is a charitable nonprofit corporation—and, in any event, the NRA's own allegations that the Foundation has been and intends to continue funding restricted grants to the NRA according to their terms forecloses any finding of breach. **Counts V, VII, VIII, and IX**, sounding in contract, fail under Rule 12(b)(6) because the NRA has not alleged facts to show breach or damages. Moreover, the NRA's quasi-contract claims are barred by the express contract that governs the parties' agreement for grants. Finally, **Counts I, II, III, and IV**, alleging various claims for purported infringement of the NRA's

intellectual property, fail under Rule 12(b)(6) because the NRA's allegations are wholly conclusory and, in any event, the NRA's own allegations confirm that the NRA acquiesced in or consented to the Foundation's use of the name "The NRA Foundation, Inc." in its perpetual corporate charter, such that the NRA's claims are implausible.

It follows that ***Counts I–IX*** should be dismissed with prejudice under Rule 12(b)(6) because these claims are irreparably deficient.

WHEREFORE, the Foundation respectfully requests that the Court grant this Motion and dismiss the entire action with prejudice.

Dated: February 13, 2026                                        Respectfully submitted,

                                                                **DLA PIPER LLP**

                                                                 */s/ Mary E. Gately*
                                                                Mary E. Gately (D.C. Bar No. 419151)
                                                                500 Eighth Street NW
                                                                Washington, DC 20004
                                                                Tel: (202) 799-4507
                                                                Fax: (202) 799-5507
                                                                mary.gately@dlapiper.com

                                                                Christopher Oprison (D.C. Bar No. 489087)
                                                                200 S. Biscayne Blvd., Suite 2500
                                                                Miami, FL 33131
                                                                Tel: (305) 423-8522
                                                                Fax: (305) 657-6366
                                                                chris.oprison@dlapiper.com

                                                                Meagan D. Self (admitted *pro hac vice*)
                                                                1900 N. Pearl Street, Suite 2200
                                                                Dallas, TX 75201
                                                                Tel: (214) 743-4556
                                                                Fax: (972) 813-6254
                                                                meagan.self@dlapiper.com

                                                                Marie Bussey-Garza
                                                                1650 Market Street

One Liberty Place, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
Fax: (215) 656-3301
marie.bussey-garza@dlapiper.com

*Attorneys for Defendant The NRA Foundation, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONAL RIFLE ASSOCIATION OF
AMERICA, INC.,

       *Plaintiff*,

   v.

THE NRA FOUNDATION, INC., *sued as*
NRA FOUNDATION, INC.

       *Defendant*.

Civil Action No. 1:26-cv-00015 (SLS)

**MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF
DEFENDANT THE NRA FOUNDATION, INC.'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.    BACKGROUND ......................................................................................... 3

    A.    Legal Background ......................................................................... 3

    B.    Factual Background ...................................................................... 4

        1.    The Foundation Is a D.C. Nonprofit Corporation. ..................... 4

        2.    The Foundation Is Tax-Exempt Under Section 501(c)(3). ......... 5

        3.    The Foundation Has Become a Successful Charity. .................... 6

        4.    The NRA Has a History of Jeopardizing the Foundation's
            Charitable Status. ....................................................................... 6

        5.    The Foundation Has Since Taken Lawful Steps to Increase Its
            Independence from the NRA and Protect Its Charitable Assets. ...... 8

III.    LEGAL STANDARD ................................................................................ 8

    A.    Rule 12(b)(1) ................................................................................ 8

    B.    Rule 12(b)(6) ................................................................................ 9

IV.    ARGUMENT ............................................................................................ 10

    A.    This Court Should Dismiss Counts V–XI Under Rule 12(b)(1) for
        Lack of Standing. ....................................................................... 10

        1.    Only the Attorney General Typically Has Standing to Enforce a Charitable
            Trust, and There Is No Basis to Deviate from the General Rule Here;
            Accordingly, Count VI Should Be Dismissed. ......................................... 11

            a.    The Foundation Is Not a Trust. .................................................... 13

            b.    The Settlor Exception to the Attorney General's Exclusive
                Standing Does Not Apply to the NRA. ......................................... 15

            c.    The Special-Interest Exception to the Attorney General's
                Exclusive Standing Does Not Apply to the NRA. ........................ 16

            d.    In Any Event, the NRA's Standing Is Foreclosed Because It
                Improperly Challenges the Foundation's Ordinary Discretion
                and Seeks Only to Vindicate Its Individual Interest. .................... 18

        2.    The NRA Lacks Standing to Assert Claims Under the D.C. Nonprofit
            Corporations Act (Counts X and XI). ....................................................... 19

         3.    The NRA's Claims Sounding in Contract (Counts V, VII, VIII, and IX)
            Separately Require Dismissal for Lack of Standing Because the NRA
            Has Not Alleged a Concrete Injury. ......................................................... 20

    B.    This Court Should Dismiss Counts I–IX Under Rule 12(b)(6) Because the
        NRA Has Not Alleged Facts Sufficient to State Any of These Claims. ............... 21

1.    The NRA Has Not Identified a Trust or Alleged Facts Showing Any Breach Thereof, so Count VI Fails as a Matter of Law. ........................... 21

2.    Plaintiff's Contract-Based Claims (Counts V and VII–IX) Are Barred by the Express Contract Between the NRA and the Foundation. .................. 23

3.    Plaintiff's Contract-Based Claims Separately Fail Because the NRA's Own Allegations Confirm the Foundation Has Complied with Its Contracts Concerning Donated Funds. .................................................... 24

    a.    The NRA's Third-Party Breach of Contract Claim (Count V) Fails. ....................................................................... 25

    b.    The NRA's Breach of Implied Contract Claim (Count VII) Fails. ..................................................................... 27

    c.    The NRA's Promissory Estoppel Claim (Count VIII) Fails. ........ 28

    d.    The NRA's Unjust Enrichment Claim (Count IX) Fails. ............. 29

4.    The NRA's Intellectual Property Claims (Counts I–IV) Should Be Dismissed Because the NRA Did Not Allege Facts Showing Unauthorized Use ................................................................................. 30

V.    CONCLUSION ............................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004) ................................................................................24

*Armenian Assembly of Am., Inc. v. Cafesjian*,
  772 F. Supp. 2d 20 (D.D.C. 2011) ...............................................................18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... *passim*

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
  518 F. Supp. 3d 505 (D.D.C. 2021) ...................................................4, 8, 9, 10

*Austin-Spearman v. AARP*,
  119 F. Supp. 3d 1 (D.D.C. 2015) .........................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................9

*Bronner v. Duggan*,
  962 F.3d 596 (D.C. Cir. 2020) ...............................................................................8

*Cabaniss v. Cabaniss*,
  464 A.2d 87 (D.C. 1983) .......................................................................................13

*Couch v. Verizon Commc'ns Inc.*,
  105 F.4th 425 (D.C. Cir. 2024) ...........................................................................10

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) .............................................................................5

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ...............................................................................................10

*Duggan v. Keto*,
  554 A.2d 1126 (D.C. 1989) ..................................................................................13

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ...............................................................................5

*Farina v. Janet Keenan Hous. Corp.*,
  335 A.3d 537 (D.C. 2025) ...................................................................... *passim*

*Ford v. Nation's Cap. S. Md. Area Local, Am. Postal Workers Union, AFL-CIO*,
  No. 05-0588, 2005 U.S. Dist. LEXIS 33973 (D.D.C. Dec. 8, 2005)......................................26

*Geier v. Conway, Homer & Chin-Caplan, P.C.*,
  983 F. Supp. 2d 22 (D.D.C. 2013) ..............................................................................25, 27, 28

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
  672 F. Supp. 2d 106 (D.D.C. 2009) ...........................................................................................30

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987) ....................................................................................................8

*Hancock v. Urban Outfitters, Inc.*,
  830 F.3d 511 (D.C. Cir. 2016) .............................................................................................10, 20

*He Depu v. Yahoo! Inc.*,
  950 F.3d 897 (D.C. Cir. 2020) ...................................................................................................13

*Headfirst Baseball LLC v. Elwood*,
  168 F. Supp. 3d 236 (D.D.C. 2016) ...........................................................................................28

*\*Hooker v. Edes Home*,
  579 A.2d 608 (D.C. 1990) ............................................................................................... *passim*

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ....................................................................................................5

*Kevin S. Bennett Tr. v. Bennett*,
  561 F. Supp. 2d 22 (D.D.C. 2008) .............................................................................................13

*Kimelman v. Garland*,
  588 F. Supp. 3d 84 (D.D.C. 2022) ..............................................................................................8

*Kobelia v. FBI*,
  No. 24-2542 (SLS), 2025 U.S. Dist. LEXIS 96007 (D.D.C. May 20, 2025)
  (Sooknanan, J)...........................................................................................................................9, 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994).......................................................................................................................9

*Langeman v. Garland*,
  88 F.4th 289 (D.C. Cir. 2023) .................................................................................................5, 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)......................................................................................................................20

*Marinangeli v. Lehman*,
  32 F. Supp. 2d 1 (D.D.C. 1998) .................................................................................................32

iv

*Metro. Life Ins. Co. v. Barbour*,
    555 F. Supp. 2d 91 (D.D.C. 2008) ......................................................................26

*Nat'l Sav. & Tr. Co. v. Sarolea*,
    269 F. Supp. 4 (1967) ......................................................................................13

*News World Commc'ns, Inc. v. Thompsen*,
    878 A.2d 1218 (D.C. 2005) ..............................................................................29

*Partido Revolucionario Dominicano (PRD) v. Partido Revolucionario*
    *Dominicano*,
    312 F. Supp. 2d 1 (D.D.C. 2004) ......................................................................30

*Pearson v. Sunnova Energy Int'l*,
    No. 1:25-cv-00251-RCL, 2025 U.S. Dist. LEXIS 157996 (D.D.C. Aug. 13,
    2025) ..............................................................................................................25, 26

*\*Phillips v. WCP Fund I LLC*,
    No. 1:24-cv-03366, 2025 U.S. Dist. LEXIS 164605 (D.D.C. Aug. 25, 2025) ...........24, 28, 29

*Regan v. Tax'n with Representation*,
    461 U.S. 540 (1983) ............................................................................................4

*Schiff v. Am. Ass'n of Retired Pers.*,
    697 A.2d 1193 (D.C. 1997) ..............................................................................24

*Silberberg v. Becker*,
    191 A.3d 324 (D.C. 2018) ................................................................................25

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................10

*Taylor v. Fed. Aviation Admin.*,
    No. 18-cv-00035, 2019 U.S. Dist. LEXIS 134309 (D.D.C. Aug. 9, 2019) ...........................30

*Tushnet v. U.S. Immigr. & Customs Enf't*,
    246 F. Supp. 3d 422 (D.D.C. 2017) ..................................................................30

*United States v. Kellogg Brown & Root Servs.*,
    800 F. Supp. 2d 143 (D.D.C. 2011) .............................................................23, 24

*Whiting v. AARP*,
    701 F. Supp. 2d 21 (D.D.C. 2010) ...........................................................27, 29, 30

*Whittington v. United States*,
    867 F. Supp. 2d 102 (D.D.C. 2012) ..................................................................23

*Wilson v. Dnc Servs. Corp.*,
315 F. Supp. 3d 392 (D.D.C. 2018) ...............................................................28, 29

**Statutes**

15 U.S.C. § 1114 ..........................................................................................30

I.R.C.
§ 170(a), (c)(2) .......................................................................................3
§ 501(a) ................................................................................................14
§ 501(c)(3) ...............................................................................3, 4, 5, 14
§ 501(c)(4) .........................................................................................3, 4
§ 509(a) ................................................................................................14

*D.C. Code
§ 19-1301.03(16) ..............................................................................13, 15
§ 19-1304.05(c) ....................................................................................12
§ 29-403.04(b) ..................................................................................19, 20

D.C. Nonprofit Corporations Act ....................................................... *passim*

**Other Authorities**

*26 C.F.R.
§ 1.501(c)(3)-1(a)(1) ..........................................................................3, 17
§ 1.501(c)(3)-1(b) ..................................................................................3
§ 1.501(c)(3)-1(c) ..................................................................................3
§ 1.501(c)(3)-1(d) .............................................................................3, 4, 17
§ 1.527-6(b)(1)(ii) ..................................................................................4

Fed. R. Civ. P.
8 ..........................................................................................................22
12(b)(1) ............................................................................................ *passim*
12(b)(6) ............................................................................................ *passim*
12(h)(3) .................................................................................................9

Fed. R. Evid. 201(c) ...................................................................................10

Kerry Picket, *Infighting, Money Woes Drag Down NRA's Comeback as a
Heavyweight in American Politics*, The Wash. Times (Feb. 2, 2026),
https://www.washingtontimes.com/news/2026/feb/2/infighting-money-woes-
drag-nras-comeback-heavyweight-american .........................................1

Restatement (Third) of Trusts § 3(1) (A.L.I. 2024) ......................................15

Rev. Rul.

    63-252, 1963-2 CB 101.................................................................................4

    68-489, 1968-2 C.B. 210.............................................................................4

    75-65, 1975-1 CB 79..................................................................................4


*Friends Dinners – What Now*, No Lawyers – Only Guns and Money (Jan. 23,

    2026), https://onlygunsandmoney.com/?p=35960..................................................18

# I.    INTRODUCTION

The National Rifle Association of America, Inc. ("NRA") brings this action against The NRA Foundation, Inc. ("Foundation"), not to assert any properly held rights that have been infringed, but in an improper effort to co-opt the Foundation's assets to fund its own operations. According to the NRA's auditors, it has experienced net losses over the past two years and has had to liquidate more than $40 million of its investment portfolio "to reduce debt and provide funding for operations."[1] With more than $200 million in net assets, the Foundation is the NRA's most successful affiliate, and recent changes at the Foundation to improve governance have impacted the NRA's ability to use Foundation funds for its own interests.

This Motion is not the first time the NRA has been accused of attempting to exercise improper control over the Foundation's assets. In 2020, the Attorney General for the District of Columbia ("DC AG") sued the NRA and the Foundation to stop the NRA—a 501(c)(4) organization to which donations are ***not*** tax deductible—from financially exploiting the Foundation—a 501(c)(3) organization to which donations ***are*** tax deductible. The Foundation vigorously defended the lawsuit, and the NRA and the Foundation ultimately entered a Consent Judgment with the DC AG, which requires the Foundation to take certain steps to shore up its independence from the NRA and protect its fisc for the benefit of its charitable purpose.

When the Foundation subsequently began implementing the Consent Judgment's requirements and taking additional lawful governance measures, the NRA became frustrated with its inability to control the Foundation's operations for its own self-interest. The NRA responded

---

[1] Kerry Picket, *Infighting, Money Woes Drag Down NRA's Comeback as a Heavyweight in American Politics*, THE WASH. TIMES (Feb. 2, 2026), https://www.washingtontimes.com/news/2026/feb/2/infighting-money-woes-drag-nras-comeback-heavyweight-american.

with a series of measures to inhibit the Foundation's oversight, including, for example, preventing the Foundation from accessing its donor lists and social media accounts and refusing the Foundation's request to oversee training and staff meetings for Foundation fundraising events, despite the fact that the Foundation carries the legal risk for these events and funded 100% of the personnel and operational expenses. When the Foundation pushed back and informed the NRA that it would not provide discretionary funding to the NRA until it ceased its improper conduct, the NRA retaliated by filing this baseless lawsuit asking this Court to do what the DC AG brought an enforcement action to prevent: cede control of Foundation assets to the NRA. But, as summarized here and discussed in detail below, each of the NRA's claims is irreparably flawed, either for lack of standing under Rule 12(b)(1) or because the Complaint's allegations foreclose the claims under Rule 12(b)(6)—or both:

- **Count VI** for alleged third-party beneficiary and settlor breach of trust should be dismissed under Rule 12(b)(1) because the Foundation is not a trust and, regardless, the NRA does not fall within any of the limited exceptions to the general rule that only the Attorney General has standing to enforce the terms of a charitable trust. This claim should separately be dismissed under Rule 12(b)(6) because the NRA has not identified any trust—as the Foundation is a charitable nonprofit corporation—and, in any event, the NRA's own allegations that the Foundation has been and intends to continue funding restricted grants to the NRA according to their terms forecloses any finding of breach.

- **Counts X and XI** for alleged violations of the D.C. Nonprofit Corporations Act should be dismissed under Rule 12(b)(1) because the NRA is, again, not the Attorney General, which is tasked with enforcing the Act for the public good, and the NRA is not among the specifically enumerated private entities that have standing to assert claims under the Act.

- **Counts V, VII, VIII, and IX**, all of which sound in contract, should be dismissed under Rule 12(b)(1) because the NRA's allegation that the Foundation has been and intends to continue providing restricted grants to the NRA according to their express terms forecloses any injury-in-fact sufficient to establish Article III standing. These claims separately fail under Rule 12(b)(6) because the NRA has not alleged facts to show breach or damages. In addition, the NRA's quasi-contract claims are barred by the express contract that governs the parties' agreement for grants, which is integral to and

implicated by the Complaint and thus appropriate for consideration on a motion under Rule 12(b)(6).

- ***Counts I, II, III, and IV***, alleging various claims for purported infringement of the NRA's intellectual property, should be dismissed under Rule 12(b)(6) because the Complaint's allegations are wholly conclusory and thus not entitled to the assumption of truth and, in any event, the NRA's own allegations confirm that the NRA acquiesced in or consented to the Foundation's use of the name "The NRA Foundation, Inc." in its perpetual corporate charter, such that the NRA's claims are implausible.

In short, this lawsuit should never have been filed, and the claims cannot survive under Rules 12(b)(1) and 12(b)(6). Accordingly, because the NRA asserts legally impossible claims for which it has no standing, and it would be futile to permit amendment, the Foundation respectfully asks this Court to dismiss the entire action with prejudice.

## II.    BACKGROUND

### A.    Legal Background

Federal tax law provides relevant context for the parties' dispute. While most nonprofits are exempt from paying federal and state income taxes, the federal tax code confers an additional benefit on organizations exempt from taxation under Section 501(c)(3), like the Foundation, by allowing donors to claim a personal tax deduction for their donation. I.R.C. § 170(a), (c)(2). To qualify and maintain Section 501(c)(3) status, a nonprofit must (1) be organized exclusively for exempt purposes (such as charitable, scientific, and educational purposes); (2) engage primarily in activities that accomplish those purposes; (3) devote no more than an insubstantial part of its activities to lobbying; (4) not participate or intervene (directly or indirectly) in political campaigns; and (5) not share profits with any private shareholders or individuals. 26 C.F.R. § 1.501(c)(3)-1(a)(1), 1(b), 1(c), 1(d).

Social welfare organizations exempt under Section 501(c)(4), like the NRA, on the other hand, can engage in lobbying and other partisan activities, but they cannot receive tax-deductible donations. I.R.C. § 170(a), (c)(2). IRS guidance contemplates that Section 501(c)(4) organizations

3

may affiliate with Section 501(c)(3) organizations to pursue a shared charitable mission. To preserve the 501(c)(3) affiliate's exempt status, however, it is essential "the two groups be separately incorporated and keep records adequate to show that tax-deductible contributions are not used to pay for lobbying." *Regan v. Tax'n with Representation*, 461 U.S. 540, 544 n.6 (1983). The organizations may, for example, split costs for shared resources, such as employees and overhead, but the Section 501(c)(3) entity (1) cannot pay above fair market value for those services, and (2) must take reasonable steps to ensure such funds are not used for prohibited purposes. 26 C.F.R. § 1.501(c)(3)-1(d); *see also id.* § 1.501(c)(3)-1(f)(2)(iv) (Example 1, illustrating the principle that transactions of a Section 501(c)(3) organization with related parties must not exceed fair market value; 26 C.F.R. § 1.527-6(b)(1)(ii). Section 501(c)(3) organizations may also issue grants to fund the charitable activities of a Section 501(c)(4) organization, but IRS guidance requires that the Section 501(c)(3) organization maintain discretion and control over the use of those grant funds to ensure they are used for Section 501(c)(3) purposes. *See* Rev. Rul. 68-489, 1968-2 C.B. 210. Failure to comply with these regulations and guidance may result in a nonprofit losing its Section 501(c)(3) tax-exempt status and donors to the nonprofit losing their tax deductions. *Id.*; Rev. Rul. 63-252, 1963-2 CB 101; Rev. Rul. 75-65, 1975-1 CB 79.

## B.    Factual Background

### 1.    The Foundation Is a D.C. Nonprofit Corporation.

On August 3, 1990, three attorneys with Cadwalader, Wickersham & Taft incorporated The NRA Foundation, Inc. as a District of Columbia nonprofit corporation. Ex. 1, Articles of Incorporation ("Articles").[2] The Foundation was formed for charitable purposes to benefit the

---

[2] In deciding a motion pursuant to Rule 12(b)(1), courts "are free to consider materials outside the pleadings[.]" *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 512 (D.D.C. 2021); *see also* § III(A), *infra*. Under Rule 12(b)(6), courts may consider, in addition to the complaint, "any documents either attached to or incorporated in the complaint and matters of

general public, including (a) promoting firearms and hunting safety; (b) educating individuals with respect to firearms history and hunting safety and marksmanship; and (c) conducting research in furtherance of improving firearms safety and marksmanship facilities and techniques. *Id.* at Art. 3. One of the Foundation's purposes is to "support the activities of the [NRA], but only to the extent that such activities are in furtherance of charitable, educational and scientific purposes within the meaning of section 501(c)(3)." *Id.* If the Foundation is ever dissolved, the Articles provide that the Foundation's net assets go—not to the NRA or another NRA charity—but to charities the Foundation's Trustees determine are organized and operated consistent with the Foundation's mission. *Id.* at Art. 7. In connection with incorporating and obtaining its nonprofit charter, the Foundation obtained a notarized letter from the NRA consenting to the use of "NRA" in the name The NRA Foundation, Inc. Ex. 1, Articles at 10.

## 2. The Foundation Is Tax-Exempt Under Section 501(c)(3).

On November 30, 1990, the Foundation submitted an Application for Recognition of Exemption Under Section 501(c)(3) ("Form 1023") to the Department of the Treasury. *See* Ex. 2, Form 1023. In identifying the type of organization seeking tax-exempt status, the Foundation selected "corporation," not "trust." *Id.* at 1. When asked to identify the sources of financial support, the application lists—not the NRA—but "(1) contributions from individuals, (2) contributions from corporations, and (3) miscellaneous investment income." *Id.* at 2. The required financial statement

---

which [the court] may take judicial notice." *Langeman v. Garland*, 88 F.4th 289, 291 (D.C. Cir. 2023) (alteration in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)); *see also* § III(B), *infra*. All of the documents attached as exhibits to this Motion are appropriate for consideration under both Rule 12(b)(1) and 12(b)(6). Many of the documents are incorporated into or integral to the Complaint. *See* Compl. ¶¶ 32–33, 60–66 (Bylaws); *id.* ¶ 33 (Articles of Incorporation); *id.* ¶¶ 45–46 (2024 Annual Report); *id.* ¶ 78 (Grant Agreement). In addition, the Foundation's corporate documents, such as its Articles of Incorporation, Form 1023, and Bylaws are subject to judicial notice, as are the public filings and the Consent Judgment entered in the DC AG action. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

shows no revenue, expenses, or existing assets or liabilities—much less any contributions from the NRA. *Id.* at 8. When the IRS reviewed the application, it specifically asked whether the NRA will donate any funds to the Foundation, and the Foundation responded, "it is not anticipated that the NRA will donate funds (other than paying for certain organizational expenses) to the Foundation . . . the Foundation will be funded by contributions from individuals, corporations and foundations." *Id.* at 36. After receiving the Foundation's responses to these and other questions, the IRS determined on April 17, 1991, that the Foundation was a charity exempt from taxation under 501(c)(3). Ex. 3, IRS Designation Letter, April 17, 1991.

### 3.    The Foundation Has Become a Successful Charity.

Since its inception, the Foundation has experienced steady growth and accrued more than $202 million in net assets as of December 31, 2024. Ex. 4, Foundation 2024 Annual Report at 9, 13. Of the $202 million in net assets, about $168 million are assets with donor restrictions. *Id.* at 13, 14, 28. Of those restricted assets, about $36 million (or roughly 22%) are restricted funds where the NRA is designated as the beneficiary ("NRA Restricted Grants"). *Id.* at 30.

These assets have allowed the Foundation to fund over $17 million in grants to benefit educational programs, school safety, law enforcement training, range development, and firearm training, education, and safety in 2024. *Id.* at 9, 16. Of the more than $17 million in grants the Foundation funded in 2024, about $7.2 million (or less than half) went to charitable programs operated by the NRA. *Id.* at 30. The Foundation provides funds to support the NRA's charitable activities through a written Grant Agreement pursuant to a relationship "of grantor and grantee and not that of . . . beneficiary/trustee." Ex. 5, 2026 Grant Agreement § 4.1.

### 4.    The NRA Has a History of Jeopardizing the Foundation's Charitable Status.

On August 6, 2020, the DC AG sued the Foundation and the NRA, alleging that the NRA improperly used Foundation funds "[t]o plug financial holes caused by its poor management." Ex.

6, DC AG Second Amended Complaint ¶ 2. Specifically, the DC AG alleged that "[b]ecause the Foundation's Board of Trustees and executives [were] dominated by the NRA, and the NRA had subverted the Foundation's independence, the Foundation ha[d] allowed itself to be financially exploited through, among other things, unfair loans and management fee payments to the NRA" (*id.*) and by permitting "the NRA to circumvent its grant process" (*id.* ¶ 71). According to the DC AG, the "Foundation's lack of adequate oversight over its transactions with the NRA jeopardizes its nonprofit purpose and independence from the NRA." *Id.* ¶ 73.

The DC AG asked the Court to, among other things, "[m]odify Foundation governance polices to ensure proper independence from NRA"; and "[a]ppoint an independent receiver or other Court-supervised official to: (i) [m]onitor all Foundation financial decisions and transactions; (ii) [o]versee and monitor the ***revision and modification of the Foundation-NRA relationship*** to ensure modification of governance policies ***result in independence from the NRA, including replacement of Trustee membership***, and in the operation of management of the Foundation's affairs[.]" *Id.*, Prayer for Relief (emphases added).

The Foundation denied the DC AG's allegations and vigorously defended the nearly four-year litigation. On April 16, 2024, the parties entered a favorable Consent Judgment, which avoided the DC AG's requested receiver but required the Foundation to, among other things, (1) conduct annual board and officer training that covers conflicts of interests and related party transactions; (2) form an audit committee independent from the NRA; (3) adopt a conflict-of-interest policy separate from the NRA's policy; (4) implement certain grantmaking procedures for grants to the NRA; (5) adopt a new shared services agreement with the NRA; (6) implement a policy governing loans to the NRA; and (7) make certain reports to the DC AG. Ex. 7, Consent Judgment.

### 5.    The Foundation Has Since Taken Lawful Steps to Increase Its Independence from the NRA and Protect Its Charitable Assets.

Since resolving the DC AG litigation, the Foundation has worked to implement both required and lawful measures to improve governance and increase oversight, including, but not limited to, amending its Bylaws to, among other things, remove the requirements that the NRA appoint Foundation Trustees and that a majority of Foundation Trustees be NRA directors. *See* Compl. ¶ 32; Ex. 8, August 23, 2024 Bylaws. The NRA has sought to thwart those efforts at every turn, repeatedly acting to interfere with the Foundation's independence and oversight of its funding. Therefore, in December 2025, the Foundation informed the NRA that until the NRA ceased these activities and allowed the Foundation to exercise increased oversight over Foundation fundraising activities, the Foundation would only fund NRA Restricted Grants according to their terms and not fund any new discretionary grants to the NRA in 2026. *See* Compl. ¶ 78. In retaliation, this meritless lawsuit followed.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(1)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" *Kimelman v. Garland*, 588 F. Supp. 3d 84, 87 (D.D.C. 2022) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)); *see also Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 511–12 (D.D.C. 2021) (explaining that when Rules 12(b)(1) and 12(b)(6) are invoked in the same motion, "a court must first address the issues encompassed by Rule 12(b)(1), as those issues implicate the court's ability to hear the case at all"), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022). "Article III of the Constitution prescribes that [f]ederal courts are courts of limited subject-matter jurisdiction and ha[ve] the power to decide only those cases over which Congress grants jurisdiction." *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir.

2020) (alterations in original) (internal quotation marks and citation omitted). Because "[i]t is to be presumed that a cause lies outside th[e Court's] limited jurisdiction," the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

While courts accept as true a complaint's well-pleaded factual allegations, they do not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations," and "the allegations in the complaint bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion[.]" *Ass'n of Am. Physicians & Surgeons*, 518 F. Supp. 3d at 512 (internal quotation marks and citations omitted). Moreover, "because courts have an independent obligation to determine whether subject-matter jurisdiction exists, . . . they are free to consider materials outside the pleadings[.]" *Id.* (internal quotation marks and citations omitted). "Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, courts **must** dismiss any claim over which they lack subject matter jurisdiction." *Id.* at 511 (emphasis added); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court **must** dismiss the action." (emphasis added)).

## B.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts will "assume [the] veracity" of "well-pleaded factual allegations," but conclusory allegations are "not entitled to the assumption of truth." *Id.* at 680–81; *see also, e.g.*, *Kobelia v. FBI*, No. 24-2542 (SLS), 2025 U.S. Dist. LEXIS 96007, at *16 (D.D.C. May 20, 2025) (Sooknanan, J.) ("[T]he Court need not accept the plaintiff's legal conclusions cast in the form of factual allegations." (internal quotation marks and citation omitted)). Moreover, "a formulaic

recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Rather, the complaint's well-pleaded "[f]actual allegations must be enough to raise a right to relief above the speculative level"—they must "nudge[] the[] claims across the line from conceivable to plausible[.]" *Id.* at 555, 570.

When deciding a motion to dismiss under Rule 12(b)(6), courts may consider the "complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Langeman v. Garland*, 88 F.4th 289, 291 (D.C. Cir. 2023) (internal quotation marks and citation omitted); *see also Kobelia*, 2025 U.S. Dist. LEXIS 96007, at *16 (same); Fed. R. Evid. 201(c) ("The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.").

"Rule 12(b)(6) . . . *requires* courts to dismiss any claim upon which relief could not be granted[.]" *Ass'n of Am. Physicians & Surgeons*, 518 F. Supp. 3d at 511 (emphasis added). Furthermore, when (as here) the facts alleged in the complaint demonstrate that amendment would be futile, dismissal with prejudice is warranted. *See Couch v. Verizon Commc'ns Inc.*, 105 F.4th 425, 431 (D.C. Cir. 2024).

## IV.    ARGUMENT

### A.    This Court Should Dismiss Counts V–XI Under Rule 12(b)(1) for Lack of Standing.

"Federal courts cannot address the merits of a case until jurisdiction—the power to decide—is established." *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016). "One 'essential and unchanging' component of federal court jurisdiction is the 'requirement that a litigant have standing to invoke the authority of a federal court.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). "Until that jurisdictional threshold is crossed, 'the court cannot proceed at all in any cause.'" *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

83, 94 (1998)) (additional citation omitted). Critically, "[t]he plaintiff . . . bears the burden to establish standing." *Farina v. Janet Keenan Hous. Corp.*, 335 A.3d 537, 549 (D.C. 2025) (internal quotation marks and citation omitted).

As set forth in detail below, the NRA did not and cannot allege facts sufficient to establish standing for Breach of Trust (Count VI), Violations of the D.C. Nonprofit Corporations Act (Counts X and XI), and Claims Sounding in Contract (V, VII, VIII, and IX). Accordingly, each of these claims should be dismissed with prejudice.

> **1.    Only the Attorney General Typically Has Standing to Enforce a Charitable Trust, and There Is No Basis to Deviate from the General Rule Here; Accordingly, Count VI Should Be Dismissed.**

Count VI alleges third-party beneficiary and settlor breach of trust by the Foundation. "The general rule is that 'only a public officer . . . has standing to bring an action to enforce the terms of the [charitable] trust.'" *Id.* at 550 n.5 (quoting *Hooker v. Edes Home*, 579 A.2d 608, 612 (D.C. 1990)). This rule arises from the unique characteristics of a charitable trust, "[a]s distinguished from a private trust, which is characterized by identified beneficiaries who enjoy equitable ownership of the property and for whose benefit the trustees are obliged to act[.]" *Hooker*, 579 A.2d at 611 (citation omitted). "[I]n a charitable trust," by contrast, "the obligation of the trustee is to apply the trust res[] for some form of ***public benefit***[.]" *Id.* (emphasis added) (internal quotation marks and citation omitted). "[S]pecific individuals or members of a class of individuals may receive a benefit from time to time," but "the interest in ensuring that charitable trust property is put to proper purposes is properly that of the community at large[.]" *Id.* at 611–12. Accordingly, "the traditional rule has been that only a public officer, usually the state Attorney General, has standing to bring an action to enforce the terms of the trust." *Id.* at 612.

"[T]he rationale" for this rule "stems from the inherent impossibility of establishing a distinct justiciable interest on the part of a member of a large and constantly shifting benefited

class, and the recurring burdens on the trust res and trustee of vexatious litigation that would result from recognition of a cause of action by any and all of a large number of individuals who might benefit incidentally from the trust." *Id.* There are thus **limited** exceptions to this rule, including that an action to enforce a charitable trust for the public benefit may be pursued by "[t]he settlor of a charitable trust," D.C. Code § 19-1304.05(c), or an individual who "has a 'special interest' in continued performance of the trust ***distinguishable from that of the public at large***," *Hooker*, 579 A.2d at 612 (emphasis added).

The NRA invokes both exceptions to the Attorney General's exclusive standing, *see* Compl. ¶ 129, but satisfies neither. As an initial matter, the Foundation is not a trust, and the NRA has expressly agreed that its relationship with the Foundation is not that of beneficiary-trustee. *See* § IV(A)(1)(a), *infra*. Rather, the Foundation is a charitable nonprofit corporation. While the D.C. Nonprofit Corporations Act expressly enumerates limited private entities who have standing to challenge the conduct of a charitable corporation, some courts apply the law of charitable trusts to charitable corporations. *See, e.g.*, *Farina*, 335 A.3d at 549 (noting the trial court assumed the trust code applied). As set forth below, the NRA lacks standing under the D.C. Nonprofit Corporations Act. *See* § IV(A)(2), *infra*. Even assuming the charitable-trust standing analysis applies here, the NRA lacks standing for its breach of trust claim because, as noted above, (a) the Foundation is not a trust and, in any event, the NRA (b) is not the Foundation's settlor; (c) does not have a special interest in the Foundation's services as distinguished from the general public and has not even alleged that the Foundation's existence is at risk; and (d) does not seek to enforce the trust for the public benefit, but rather improperly seeks to challenge the Foundation's ordinary discretion to vindicate its own individual interests. All of these factors are discussed in greater detail below.

### a.    The Foundation Is Not a Trust.

The Foundation was formed as a 501(c)(3) nonprofit corporation for charitable purposes. It is not and has never been a trust. Indeed, the NRA has repeatedly acknowledged that the Foundation provides funds to support the NRA's charitable activities pursuant to a relationship "of grantor and grantee and ***not that of . . . beneficiary/trustee.***" *See* Ex. 5, 2026 Grant Agreement § 4.1 (emphasis added). That ends the matter and requires dismissal with prejudice. Furthermore, a review of trust law confirms this result.

In order to form a trust, a settlor—"a person . . . who creates, or contributes property to, a trust," D.C. Code § 19-1301.03(16)—must express an "intention to create a trust." *Duggan v. Keto*, 554 A.2d 1126, 1133 (D.C. 1989); *see also He Depu v. Yahoo! Inc.*, 950 F.3d 897, 902 (D.C. Cir. 2020) (same). This intention is typically expressed in writing in either a trust instrument or a will. *See, e.g.*, *Kevin S. Bennett Tr. v. Bennett*, 561 F. Supp. 2d 22, 26 (D.D.C. 2008) (construing terms of written, *inter vivos* trust agreement); *Nat'l Sav. & Tr. Co. v. Sarolea*, 269 F. Supp. 4, 4 (D.D.C. 1967) (construing a testamentary trust).

Beyond that, three elements are required for the creation of a trust: "[1] a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; [2] a beneficiary, to whom the trustee owes such duties; and [3] the trust property, which is held by the trustee for the beneficiary." *Duggan*, 554 A.2d at 1133 (citing *Cabaniss v. Cabaniss*, 464 A.2d 87, 91 (D.C. 1983)). None of the required elements is present here.

The Foundation was formed in 1990 pursuant to its Articles of Incorporation, which confirm that the Foundation is ***not*** a trust. *See* Ex. 1, Articles at 1–2; *see also* Ex. 2, Form 1023 at 1 (designating the Foundation as a "corporation," not a "trust"). As set forth in that founding document, the Foundation was formed by Stephen N. Schulman, Robert A. Rudnick, and Jana S. DeSirgh "to be operated exclusively to carry out" certain "charitable, educational and scientific

13

purposes[.]" *See* Ex. 1, Articles at 1, 5. Nowhere does the Foundation's organizing document refer to the NRA, or anyone else, as the settlor of the Foundation. *See generally id.*

Moreover, no language in the Articles of Incorporation suggests any intent by anyone, let alone the NRA, to create a trust for the benefit of the NRA. *See generally id.* To the contrary, the Articles expressly provide that "[i]t is ***intended*** that this Foundation shall have the status of a corporation that is exempt from federal income taxation under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code, and which is other than a private foundation by reason of being described in Section 509(a) of the Code." *Id.* at 2 (emphasis added). This intent is confirmed by the Foundation's Form 1023, which specifically designated the Foundation as a "corporation," not a "trust."   Ex. 2, Form 1023 at 1. In other words, the incorporators' intent is explicitly stated in detail in the Articles and confirmed in the Form 1023, and it is ***not*** to create a trust. *See id.*

Furthermore, the Articles of Incorporation do not identify any trust property provided for creation of the Foundation. *See generally* Ex. 1, Articles. Rather, the Articles empower the Foundation "to solicit and receive gifts, devises, bequests and contributions, in any form, and to use, apply, invest, and reinvest the principal and/or income therefrom or distribute the same for the above purposes[.]" *Id.* at 2; *see also id.* at Art. 6 (contemplating "net earnings of the Foundation"). The lack of any trust property is confirmed by the Foundation's Form 1023, which showed no existing assets at the time the Foundation was formed and expressly identified its source of financial support, not as the NRA, but as "(1) contributions from individuals, (2) contributions from corporations, and (3) miscellaneous investment income." Ex. 2, Form 1023 at 3. The Form 1023 further specified that "it is not anticipated that the NRA will donate funds (other than paying for certain organizational expenses) to the Foundation[.]" *Id.* at 36.

14

In short, the Foundation is a charitable corporation, not a trust. The NRA has no standing to bring claims to enforce a nonexistent trust, particularly where the NRA has explicitly recognized that its relationship with the Foundation is not that of beneficiary and trustee.

      **b.**    **The Settlor Exception to the Attorney General's Exclusive Standing Does Not Apply to the NRA.**

Even if the Foundation were a charitable trust (it is not), the NRA would have no basis to invoke the settlor exception to the DC AG's exclusive standing because the NRA is not the settlor of the Foundation.

"The person who creates a trust is the settlor." *Farina*, 335 A.3d at 549 (quoting Restatement (Third) of Trusts § 3(1) (A.L.I. 2024)); *see also id.* ("A settlor is a legal term used to refer to 'a person . . . who creates, or contributes property to, a trust.'" (alteration in original) (quoting D.C. Code § 19-1301.03(16))). As set forth in the Articles of Incorporation and discussed above, the Foundation was created by three attorneys, not by the legal entity, the National Rifle Association of America, Inc. *See* Ex. 1, Articles at 5; *see also* § II(B)(1), *supra*. Even if those individuals were affiliated with the NRA, and even if the NRA advocated for the Foundation's creation, that would not confer standing on the NRA. *See Farina*, 335 A.3d at 550 (rejecting settlor standing of former board member who had advocated for creation of a nonprofit).

*Farina* is particularly instructive on this point. In that case, a tenant of a home that provided reduced rent to low-income individuals "advocated for the establishment of a non-profit charitable corporation" to operate the home consistent with "purposes as 'preserv[ing] and promot[ing] affordable housing in the District.'" *Id.* at 540–41 (alterations in original). When the charitable corporation later sought to sell the property, the tenant sued to enjoin the sale, arguing it "would violate the Uniform Trust Code" by "violat[ing] the [charitable nonprofit's] purposes as a charitable trust." *Id.* at 549. Assuming, without deciding, that the trust code applied, the district

court dismissed the claim for lack of standing, and the Court of Appeals affirmed because the standing exception "does not apply to those . . . who merely advocated for a trust's creation, and who briefly and formerly served on [the charitable nonprofit's] board of directors." *Id.* at 549–50.

The same reasoning and outcome apply with equal force here. By the plain terms of the Articles of Incorporation, the NRA is not the creator—and thus not the settlor—of the Foundation. *See* Ex. 1, Articles at 5. Moreover, despite its conclusory allegation, made in passing, that the NRA "initially contribut[ed] to the Foundation," Compl. ¶ 130, the NRA has not identified, much less pleaded, any specific property that it purportedly contributed in trust for the creation of the Foundation, and no such transfer is recognized in the founding documents. *See generally* Ex. 1, Articles. Indeed, the Foundation's Form 1023 forecloses any suggestion that the NRA provided trust property to establish the Foundation. *See* Ex. 2, Form 1023 at 2, 8, 36 (reporting no assets at formation and identifying several sources of financial support, none of which was the NRA, and stating expectation that NRA would not contribute funds to the Foundation). Thus, like the plaintiff in *Farina*, the NRA is not a settlor and lacks standing to sue. 335 A.3d at 550.

c.    **The Special-Interest Exception to the Attorney General's Exclusive Standing Does Not Apply to the NRA.**

Similarly, the special-interest exception to the DC AG's exclusive standing does not apply to the NRA because the NRA does not have a special interest in the Foundation's activities *as* "*distinguish[ed] from that of the public at large*." *Hooker*, 579 A.2d at 612 (emphasis added).

"[T]he general rule is that one who is merely . . . a member of a class of possible beneficiaries, is not entitled to sue for enforcement of the trust." *Id.* (alteration in original) (internal quotation marks and citations omitted). "[A] particular class of potential beneficiaries," however, may have "a special interest in enforcing a trust *if the class is sharply defined and its members are limited in number*, . . . which is determined principally by examining the trust's organizing

documents, such as its bylaws, charter, and articles of incorporation." *Farina*, 335 A.3d at 550 (emphasis added) (quoting *Hooker*, 579 A.2d at 614–15). "To maintain special interest standing, the narrow class of beneficiaries must also show there is 'an extraordinary measure threatening the existence of the trust.'" *Id.* at 550 n.4 (quoting *Hooker*, 579 A.2d at 615–16). The NRA does not fall within any sharply defined, limited class benefited by the Foundation, which benefits the public at large, and the NRA has not identified any "extraordinary measure threatening" the Foundation's very existence. *Id.*

The express purposes of the Foundation set forth in its Articles of Incorporation confirm that the Foundation exists for "the well-being of the ***general public***." Ex. 1, Articles at 1; *see also* 26 C.F.R. § 1.501(c)(3)-1(a)(1), 1(d) (requiring 501(c)(3) funds be used for the benefit of the public). While certain individuals benefit directly from the Foundation's services—aimed at, among other things, promoting firearms and hunting safety; educating individuals, including youth in firearms history, safety, and marksmanship; and conducting research in furtherance of improved firearms safety—society at large benefits from improved safety and education relating to firearms, marksmanship, and hunting. *See* Ex. 1, Articles at 1. To the extent the NRA benefits through receipt of funding to support certain of its qualifying 501(c)(3) activities, the public at large is the intended beneficiary because support to the NRA is limited only to activities that "are in furtherance of the charitable, educational and scientific purposes" of that organization. *Id.* Indeed, the NRA's own Complaint acknowledges as much insofar as it alleges that reduced financial support from the Foundation will "reduce[] [the NRA's] ability to carry out its activities ***for the benefit of the public***." *See, e.g.*, Compl. ¶¶ 127, 140, 147 (emphasis added). Accordingly, the NRA's interest "in continued performance of the" Foundation's charitable services is ***aligned with***

the interest of the general public; it is not a special interest "***distinguishable from*** that of the public at large." *Hooker*, 579 A.2d at 612 (emphasis added).

In addition, the NRA has not even alleged that the Foundation's existence is at risk, nor could it.[3] To the contrary, the NRA merely complains about how the Foundation intends to allocate certain 501(c)(3) funds, which is a question committed to the discretion of the Foundation's Board. *See* Compl. ¶ 78; *see also* § IV(A)(1)(d), *infra*. As a result, even if the Foundation were a trust (and, again, it is not), the NRA could not invoke the special-interest exception to the general rule that only the Attorney General has standing to enforce a charitable trust.

> ### d.    In Any Event, the NRA's Standing Is Foreclosed Because It Improperly Challenges the Foundation's Ordinary Discretion and Seeks Only to Vindicate Its Individual Interest.

Even if the NRA could invoke an exception to the DC AG's exclusive standing (and it cannot), the NRA would still lack standing for its claims because it challenges the Board's ordinary discretion to allocate 501(c)(3) funds for the purpose of vindicating its own interests. Under established District of Columbia law, a private party has no standing, in any event, to "challenge . . . an ordinary exercise of discretion on a matter expressly committed to the trustees" or to vindicate "the interests of a given individual." *Hooker*, 579 A.2d at 615. But that is precisely what the NRA improperly seeks to do here.

As the NRA's EVP and CEO, Doug Hamlin, recently wrote in a publicly available statement, "[b]y law, all deductible contributions to 501(c)(3) organizations are ***within the discretion and control of the 501(c)(3)***[.]" Ex. 9, John Richardson, *Friends Dinners – What Now*, *No Lawyers – Only Guns and Money* (Jan. 23, 2026), https://onlygunsandmoney.com/?p=35960 (containing D. Hamlin's statement) (emphasis added); *see also Armenian Assembly of Am., Inc. v.*

---

[3] *See* Ex. 4, Foundation 2024 Annual Report (demonstrating financial stability of the Foundation).

*Cafesjian*, 772 F. Supp. 2d 20, 104 (D.D.C. 2011) ("[T]he business judgment of the fiduciary will be respected by the courts absent an abuse of discretion."). In certain instances, funds donated to a 501(c)(3) organization may be restricted for use for certain purposes. *See, e.g.*, *Armenian Assembly of Am., Inc.*, 772 F. Supp. 2d at 108–09 (discussing restricted donations). The NRA expressly acknowledges in its Complaint that the Foundation "intends to" continue funding NRA "grants required by the terms of express restrictions."[4] Compl. ¶ 78. Accordingly, the crux of the NRA's Complaint is that the Foundation's allocation of ***discretionary funds*** is causing harm to the NRA through "loss of financial support." Compl. ¶ 140. Under these circumstances—where the NRA seeks to vindicate its own rights by challenging the Foundation's ordinary discretion to allocate unrestricted funds—standing is foreclosed. *See Hooker*, 579 A.2d at 615. Counts VI, X, and XI should be dismissed with prejudice.[5]

## 2.    The NRA Lacks Standing to Assert Claims Under the D.C. Nonprofit Corporations Act (Counts X and XI).

Counts X and XI allege the Foundation violated the D.C. Nonprofit Corporations Act. As with enforcement of a charitable trust, the Attorney General is typically tasked with and has standing to enforce the charitable purposes of a charitable corporation. *See Farina*, 335 A.3d at 542; *see also* § IV(A)(1), *supra*. In limited circumstances, the D.C. Nonprofit Corporations Act provides standing to certain individuals to seek injunctive relief against a charitable corporation that is exceeding its authority. *See* D.C. Code § 29-403.04(b). Those individuals who have standing are specifically enumerated in the Act and are limited to "[a] member, director, or member of a designated body" or "[t]he corporation, directly, derivatively, or through a receiver, trustee, or

---

[4] Indeed, as they have done in the past, the parties signed a Grant Agreement, effective January 7, 2026. *See* Ex. 5, January 7, 2026 Grant Agreement.

[5] To the extent the NRA separately suggests that it seeks to enforce the terms of any specific grant made by an unidentified third-party donor to the Foundation expressly in trust for the NRA, its claim fails under Rule 12(b)(6) for the reasons discussed below. *See* § IV(B)(1), *infra*.

other legal representative[.]" *Id.* The NRA is not a member, director, member of a designated body, the Foundation, or its trustee or legal representative. Indeed, the NRA does not even allege to be any of these specifically enumerated individuals. *See generally* Compl. As a result, the NRA lacks standing to assert claims under the D.C. Nonprofit Corporations Act. Counts X and XI must be dismissed.

### 3. The NRA's Claims Sounding in Contract (Counts V, VII, VIII, and IX) Separately Require Dismissal for Lack of Standing Because the NRA Has Not Alleged a Concrete Injury.

"'[T]he irreducible constitutional minimum of standing' requires 'an injury in fact' that is both 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Hancock*, 830 F.3d at 513 (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The NRA's claims premised on alleged actual or implied contracts fail because the NRA has not alleged a "concrete and particularized" injury from any purported breach of those agreements. *Id.*

The NRA's contract claims are based on bald allegations that the NRA is entitled to funding that the Foundation is purportedly going to withhold. *See* Compl. ¶¶ 126–27 (making conclusory allegation that "[t]he Foundation is in breach of the contracts with donors by using the restricted funds for purposes other than supporting NRA Charitable Activities" and that "the NRA is not receiving and will not receive funds to support NRA Charitable Activities, causing it present and future damages"); *see also id.* ¶¶ 147, 152, and 156 (making similar bald allegations). These conclusory allegations "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Moreover, the NRA has expressly alleged that the Foundation intends to continue funding NRA "grants required by the terms of express restrictions." Compl. ¶ 78. In other words, the NRA's own allegations confirm that it is going to receive the restricted grant funding to which it claims to be entitled.

That ends the matter. The NRA's own allegations confirm that it has not been deprived of and will continue to receive restricted grant funds to which it claims to be entitled. Accordingly, the NRA does not have any injury in fact and lacks Article III standing for its claims that sound in contract. Counts V, VII, VIII, and IX should be dismissed. *See Austin-Spearman v. AARP*, 119 F. Supp. 3d 1, 14 (D.D.C. 2015) (Jackson, J.) (dismissing breach of contract and quasi-contractual claims for lack of standing due to lack of an injury in fact).

**B.    This Court Should Dismiss Counts I–IX Under Rule 12(b)(6) Because the NRA Has Not Alleged Facts Sufficient to State Any of These Claims.**

Even if the NRA had standing to assert claims for breach of trust (Count VI) or for quasi-contract theories (Counts V and VII–IX), those claims would still require dismissal under Rule 12(b)(6) because the NRA has not alleged facts sufficient to plead the required elements of the claims, and, separately, the quasi-contract claims are also barred by an express contract between the parties.[6] In addition, the NRA's intellectual property claims similarly warrant dismissal under Rule 12(b)(6) because, as discussed in detail below, the NRA has pleaded them in conclusory fashion only, and the NRA's own allegations foreclose any plausible suggestion that the Foundation infringed upon any of the NRA's rights.

**1.    The NRA Has Not Identified a Trust or Alleged Facts Showing Any Breach Thereof, so Count VI Fails as a Matter of Law.**

The NRA appears to allege two theories in support of its claim for third-party beneficiary and settlor breach of trust, but both theories fail as a matter of law on the face of the Complaint.

---

[6] For purposes of Rule 12(b)(6), the Court must accept as true the NRA's ***factual*** allegations only. *See* § III(B), *supra*. Consistent with the Rule 12(b)(6) standard, the Foundation relies on the NRA's factual allegations for purposes of its Motion under Rule 12(b)(6), but, for the avoidance of doubt, the Foundation notes that it does not concede that any of the NRA's allegations are actually true.

**First**, the NRA alleges that "[i]n establishing the Foundation in 1990, initially contributing to the Foundation, and raising funds for the Foundation to support NRA Charitable Activities, the NRA created a charitable trust for the benefit of NRA Charitable Activities"; that "[t]he NRA was therefore the settlor of the trust"; and that "[t]he NRA appointed the trustees of the Foundation to hold the funds for the benefit of NRA Charitable Activities." Compl. ¶¶ 130–31. These conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Moreover, they are foreclosed by the Foundation's Articles of Incorporation, Form 1023, and 2026 Grant Agreement, which this Court may consider under Rule 12(b)(6) and which demonstrate that the Foundation is not a trust, but rather a nonprofit charitable corporation established for the public benefit. *See* § IV(A)(1)(a), *supra*.

**Second**, the NRA alleges that it "is the identified, intended beneficiary of" some unspecified "donors' contributions" and that because those unidentified "donors contributed specifically for the benefit of NRA Charitable Activities, that created a beneficial interest for the NRA in those NRA-Restricted Funds." Compl. ¶¶ 137–38. These allegations are wholly conclusory and "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Moreover, to the extent the NRA suggests that it seeks to enforce the terms of any specific grant made by an unidentified third-party donor to the Foundation in trust for the NRA, it has not satisfied Rule 8's requirement of identifying that purported grant or any of the elements required to create a trust with respect to any such purported grant. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see generally* Compl. (failing to identify any particular grant or donor).

**Finally**, this claim separately fails because the NRA has expressly pleaded that the Foundation has confirmed it will continue to fund NRA "grants required by the terms of express

restrictions." Compl. ¶ 78; *see also* § IV(B)(3), *supra*. That is, again, confirmed by the parties' 2026 Grant Agreement, pursuant to which the Foundation funds certain charitable activities of the NRA. *See* Ex. 5, 2026 Grant Agreement. Accordingly, even if the NRA had alleged facts sufficient to identify a trust (it has not), the claim would still fail because the NRA has expressly alleged facts confirming the lack of any breach. Count VI should be dismissed with prejudice. *See Whittington v. United States*, 867 F. Supp. 2d 102 (D.D.C. 2012) (dismissing the plaintiff's complaint because his own allegations contradicted his claims).

## 2. Plaintiff's Contract-Based Claims (Counts V and VII–IX) Are Barred by the Express Contract Between the NRA and the Foundation.

"[Q]uasi-contractual remedies . . . are inapposite when an express contract governs interaction between two parties." *United States v. Kellogg Brown & Root Servs.*, 800 F. Supp. 2d 143, 160 (D.D.C. 2011). That is because "the existence of a valid contract between the parties negates the need for the court to imply a contract by law." *Id.* As a result, to survive a motion to dismiss under Rule 12(b)(6), quasi-contractual claims "must be supported by, at the very least, an allegation that there is no valid contract" between the parties. *Id.*

The NRA's quasi-contractual claims fail on the face of the Complaint because the NRA does not allege the absence of a valid contract between the NRA and the Foundation. *See generally* Compl. (lacking any such allegation). Nor could the NRA make any such allegation because the parties' agreement with respect to funding NRA grants is now and, at all relevant times has been, governed by the express terms of their Grant Agreement. *See* Ex. 5, 2026 Grant Agreement.[7]

---

[7] As noted previously, *see* p.4 n.2, *supra*, this Court may consider the parties' 2026 Grant Agreement under Rule 12(b)(6) because it is incorporated and integral to the NRA's allegations in the Complaint. *See* Compl. ¶ 78 (referencing the "terms" of NRA restricted grants, which are set forth in the 2026 Grant Agreement).

The parties' Grant Agreement expressly governs the terms pursuant to which the Foundation uses its money for the purpose of funding grants to the NRA. *See id.* That express contract "negates the need for the court to imply a contract by law" and mandates dismissal of the NRA's quasi-contract claims concerning the same subject matter. *Kellogg Brown & Root Servs.*, 800 F. Supp. 2d at 160; *see also, e.g.*, *Phillips v. WCP Fund I LLC*, No. 1:24-cv-03366, 2025 U.S. Dist. LEXIS 164605, at *17 (D.D.C. Aug. 25, 2025) ("[The plaintiff] cannot claim promissory estoppel because an express contract governed the parties' relationship."); *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) ("[T]here can be no claim for unjust enrichment when an express contract exists between the parties." (quoting *Schiff v. Am. Ass'n of Retired Pers.*, 697 A.2d 1193, 1194 (D.C. 1997)). As a result, Counts V, VII, VIII, and IX should be dismissed with prejudice.

### 3. Plaintiff's Contract-Based Claims Separately Fail Because the NRA's Own Allegations Confirm the Foundation Has Complied with Its Contracts Concerning Donated Funds.

All of the NRA's claims sounding in contract separately fail because they all rely on the same set of conclusory allegations and are foreclosed by the NRA's own allegation that "the Foundation's leadership ***intends*** to withdraw grant and other funding of the NRA ***except for grants required by the terms of express restrictions***." Compl. ¶ 78 (emphasis added). In other words, the NRA has expressly alleged that the Foundation has not withdrawn funding restricted for NRA programs, has not breached any contract concerning such funding, and intends to continue complying with the terms of any restricted grants intended to benefit the NRA. *See id.* Those allegations confirm that the Foundation has not breached any contract and has no future intent to do so. As a result, and for the additional reasons discussed below, Counts V, VII, VIII, and IX fail as a matter of law.

### a.    The NRA's Third-Party Breach of Contract Claim (Count V) Fails.

The NRA's third-party beneficiary breach of contract claim fails because the NRA has not alleged facts to identify the underlying contract(s) that were purportedly breached or to show that the NRA was the intended beneficiary of any such contract(s), and, in any event, the NRA's own allegations confirm that any such contracts were not breached.

The general rule is that only parties to a contract may bring a lawsuit concerning that contract. *See Pearson v. Sunnova Energy Int'l*, No. 1:25-cv-00251-RCL, 2025 U.S. Dist. LEXIS 157996, at *8 (D.D.C. Aug. 13, 2025). A limited exception to this general rule allows a non-party to "sue on a contract" only "if the contracting parties intended the third party to benefit." *Id.* (internal quotation marks and citations omitted). "A non-party to the contract becomes a third-party beneficiary when 'the contracting parties had an express or implied intention to benefit directly the party claiming such status.'" *Id.* at *8–9 (quoting *Silberberg v. Becker*, 191 A.3d 324, 332 (D.C. 2018)) (additional citation omitted). "The putative third-party beneficiary has the burden of proving the requisite intent." *Id.* at *9. The NRA did not and cannot satisfy its pleading burden here.

***First***, the NRA has not identified any underlying contract to support its third-party beneficiary breach of contract claim. "A breach of contract claim necessarily depends on the formation of a contract." *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 38 (D.D.C. 2013). "The essential elements of a contract are 'competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation.'" *Id.* (citation omitted). "For an enforceable contract to exist under D.C. law, there must be agreement as to all material terms—subject matter, price, payment terms, quantity, quality, and duration—and an intention of the parties to be bound." *Id.* The Complaint lacks any factual allegations as to any of the required elements to support the existence of an underlying contract formed for the benefit of the NRA.

Instead, the NRA baldly alleges that some unidentified "Donor's making of charitable contributions to the Foundation in response to the NRA's solicitations for NRA Charitable Activities created contracts where the Foundation, in consideration for the contributions, would ensure that the contributions were used for [that] purpose[.]" Compl. ¶ 124. The NRA does not allege any *facts* concerning these conclusory allegations. The NRA does not identify any specific donor, any specific contract that was purportedly entered for the benefit of the NRA, details concerning the material terms, such as the grant's amount, timing, or purpose, or any specific contract language that was allegedly used by the parties to signify their intent to form a contract for the benefit of the NRA. *See generally* Compl. (lacking any such factual allegations).

As a result, the NRA has failed to allege facts to establish the existence of an underlying contract. *See Metro. Life Ins. Co. v. Barbour*, 555 F. Supp. 2d 91, 99 (D.D.C. 2008) ("Identification of a contract is an essential element of any claim for . . . breach of contract."). Without an underlying contract, the NRA cannot be a third-party beneficiary, and its third-party beneficiary breach of contract claim fails as a matter of law. *See id.*; *see also, e.g.*, *Pearson*, 2025 U.S. Dist. LEXIS 157996, at *9 ("To assess such intent, courts first look to whether the party was expressly intended to be a beneficiary by looking at the contract's language for evidence of the party's name."); *Ford v. Nation's Cap. S. Md. Area Loc., Am. Postal Workers Union, AFL-CIO*, No. 05-0588, 2005 U.S. Dist. LEXIS 33973, at *11 n.10 (D.D.C. Dec. 8, 2005) ("[B]ecause no contract existed, . . . there could be no basis for a breach of contract claim.").

**Second**, even if this Court were to accept that some unidentified individuals or entities entered some unidentified contracts with the Foundation with the express intent of benefiting the NRA as a third-party beneficiary, the NRA's claims would still fail because it has not alleged any facts to show that any such unidentified contracts with unidentified parties were breached. To the

contrary, the NRA has expressly alleged that the Foundation intends to continue funding NRA "grants required by the terms of express restrictions," Compl. ¶ 78, which is confirmed by the parties' 2026 Grant Agreement, *see* Ex. 5, 2026 Grant Agreement. In other words, to the extent that any funds have been provided to the Foundation specifically for use by the NRA, the NRA's allegations confirm that such funds are being used for their intended purposes. That ends the matter. *See Whiting v. AARP*, 701 F. Supp. 2d 21, 28 (D.D.C. 2010) (dismissing third-party breach of contract claim because "[t]he fact that [plaintiff] desires more coverage beyond what her policy provides does not give rise to a legally cognizable cause of action"). The third-party beneficiary breach of contract claim fails as a matter of law and must be dismissed. *See id.*

### b.    The NRA's Breach of Implied Contract Claim (Count VII) Fails.

An implied contract "contain[s] all necessary elements of a binding agreement" and "is inferred from the conduct of the parties[.]" *Geier*, 983 F. Supp. 2d at 39. "To recover under an implied contract, a plaintiff must show that (1) valuable services were rendered; (2) for the person sought to be charged; (3) which services were accepted, used, and enjoyed by the person sought to be charged; (4) under such circumstances as reasonably notified the person sought to be charged that the person rendering the service reasonably expected to be paid by him." *Id.* at 39–40. The NRA has not alleged facts to support these required elements.

To the contrary, the NRA has, again, provided conclusory allegations only, claiming that "[t]he NRA's provision of valuable services to the Foundation, including fundraising, which the Foundation accepted under circumstances wherein the Foundation reasonably understood that the funds raised would be used to support NRA Charitable Activities created an implied contract." Compl. ¶ 143. These conclusory allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. More fundamentally, the allegations simply do not make sense. The NRA claims that "fundraising" is the "valuable service[]" it provided to the Foundation, but the NRA alleges

that *the NRA* was the sole intended beneficiary of that fundraising. Compl. ¶ 143. If, as the NRA

alleges, the NRA alone—and not the Foundation—was intended to receive any benefit from the

fundraising services, then that fundraising could not have been a valuable service provided to the

Foundation, which forecloses the NRA's breach of implied contract claim. *See Geier*, 983 F. Supp.

2d at 40 (dismissing breach of implied contract claim because plaintiff "failed to state a necessary

element"). Moreover, the NRA's allegations are contrary to law because the NRA, as a 501(c)(4)

organization, cannot raise tax-deductible donations. *See* § II(A), *supra*.

### c.    The NRA's Promissory Estoppel Claim (Count VIII) Fails.

To state a claim for promissory estoppel, a plaintiff must allege facts to show "(1) a

promise, (2) reasonable reliance on the promise, and (3) detriment because of the reliance."

*Phillips*, 2025 U.S. Dist. LEXIS 164605, at *16. The NRA, once again, did not and cannot satisfy

its pleading burden.

The NRA alleges, in conclusory fashion, that it relied on a promise "that the NRA would

raise funds for the Foundation and that the funds so raised would be used to fund NRA Charitable

Activities." Compl. ¶ 151. This alleged promise is vague and offers no suggestion as to any details

concerning when, how, how much, or from whom the NRA would purportedly raise funds for the

Foundation to give to the NRA. *See id.* Accordingly, the purported promise cannot support a

promissory estoppel claim because "a 'promise must be definite, as reliance on an indefinite

promise is not reasonable.'" *Wilson v. Dnc Servs. Corp.*, 315 F. Supp. 3d 392, 399 (D.D.C. 2018)

(quoting *Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 248 (D.D.C. 2016)).

In addition, reliance on this promise would be unreasonable because it is nonsensical and

contrary to law. It makes no sense for the NRA to raise funds for the Foundation to give to the

NRA. Nor could the NRA engage in tax-deductible fundraising as a 501(c)(4) organization. *See*

§ II(A), *supra*. As a result, the promissory estoppel claim fails for lack of reasonable reliance on a definite promise. *See Wilson*, 315 F. Supp. 3d at 399.

Furthermore, even if this Court were to accept the NRA's conclusory allegation that "[t]he NRA and the Foundation agreed that funds raised by the NRA for the Foundation would be used to fund NRA Charitable Activities" and that "[t]he NRA relied on that promise," the NRA's promissory estoppel claim fails. Compl. ¶¶ 150, 152. The NRA has expressly alleged that the Foundation has and will continue to fund NRA "grants required by the terms of express restrictions." *Id.* ¶ 78. Those allegations foreclose the NRA's conclusory suggestion of detriment. *See id.* ¶ 152. Accordingly, Count VIII should be dismissed. *See Phillips*, 2025 U.S. Dist. LEXIS 164605, at *19 (dismissing promissory estoppel claim as barred by an express contract and, alternatively, because plaintiff failed to allege facts showing all required elements of the claim.).

### d.    The NRA's Unjust Enrichment Claim (Count IX) Fails.

"Unjust enrichment is an equitable doctrine under which a plaintiff may recover 'when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.'" *Whiting*, 701 F. Supp. 2d at 31 (quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)). The NRA's unjust enrichment claim fails under Rule 12(b)(6) because it has not alleged facts to support these required elements.

The NRA alleges that it conferred upon the Foundation the benefits of establishing the Foundation and raising funds for the Foundation through use of the NRA's alleged valuable trademarks "on the understanding that the Foundation would support NRA Charitable Activities." *See* Compl. ¶¶ 155–56. The NRA also alleges that the Foundation historically has and intends to continue funding NRA "grants required by the terms of express restrictions." Compl. ¶ 78. In other words, the NRA alleges that it conferred benefits on the Foundation in expectation that the

29

Foundation would fund charitable activities of the NRA and that the Foundation, in fact, has and will continue to fund such activities. Accordingly, the NRA's own allegations confirm that the NRA "did not confer any unexpected or unanticipated benefit on" the Foundation, and its unjust enrichment claim thus fails as a matter of law. *Whiting*, 701 F. Supp. 2d at 32; *see also Taylor v. Fed. Aviation Admin.*, No. 18-cv-00035, 2019 U.S. Dist. LEXIS 134309, at *24 (D.D.C. Aug. 9, 2019) (explaining there is no unjust enrichment where the benefit conferred was appropriately compensated when "viewed in the context of the parties' further obligations to each other").

4.   **The NRA's Intellectual Property Claims (Counts I–IV) Should Be Dismissed Because the NRA Did Not Allege Facts Showing Unauthorized Use.**

The NRA also did not and cannot satisfy its pleading burden on its intellectual property claims. For each of these claims, the NRA must plead and ultimately prove facts to show that the Foundation used the NRA's alleged trademarks without the NRA's consent and somehow infringed on the NRA's rights. *See* 15 U.S.C. § 1114 (stating that the provision applies to conduct "without the consent of the registrant"); *Tushnet v. U.S. Immigr. & Customs Enf't*, 246 F. Supp. 3d 422, 437 (D.D.C. 2017) ("To prove trademark infringement, the trademark owner must show . . . that [the alleged infringer] uses a 're-production, counterfeit, copy, or colorable imitation' of that mark in commerce and without [the trademark holder's] consent" (internal quotation marks and citation omitted)); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 672 F. Supp. 2d 106, 109 (D.D.C. 2009) (stating elements of false-designation-of-origin claim, including that "the designation is likely to cause confusion" and that "plaintiff already has been or is likely to be damaged," which would be foreclosed by the plaintiff's authorization for use); *Partido Revolucionario Dominicano (PRD) v. Partido Revolucionario Dominicano*, 312 F. Supp. 2d 1, 15 (D.D.C. 2004) ("The analysis with respect to the parties' common law trademark

infringement claims mirrors the analysis conducted for federal statutory trademark/unfair competition claims.").

But the NRA's own factual allegations make its trademark claims implausible. The NRA alleges, in conclusory fashion, that any use by the Foundation of the NRA's trademarks has been "unauthorized" or without the NRA's "consent." *See* Compl. ¶¶ 2, 114–15. These conclusory allegations are "not entitled to the assumption of truth," and the NRA's intellectual property claims should, therefore, be dismissed. *Iqbal*, 556 U.S. at 680.

While the conclusory nature of the allegations alone requires dismissal under Rule 12(b)(6), the Complaint's factual allegations, accepted as true, demonstrate that the NRA's intellectual property claims are entirely implausible. Indeed, the Foundation's Articles of Incorporation, which the NRA relies on in its Complaint, expressly provide that "[t]he name of the corporation shall be The ***NRA*** Foundation, Inc." Ex. 1, Articles at 1 (emphasis added). Moreover, the NRA expressly consented to such incorporation, in a perpetual corporate charter, and to such name. *Id.* at 10. The NRA does not allege that it ever did or could withdraw its consent to the Foundation's use of the name The NRA Foundation, Inc. In addition, the NRA specifically alleges that the Foundation was "[f]ounded by the NRA in 1990 to support the NRA's charitable activities." Compl. ¶ 1; *see also id.* ¶ 28 ("The NRA established the Foundation, a 501(c)(3) organization, as a vehicle through which individuals and corporations could make tax-deductible contributions in support of the NRA's charitable, educational, and scientific activities connected with the lawful ownership and use of firearms."). As a result, the ***only*** plausible inference is that the NRA has known about and had no objection to the Foundation's use of the term "NRA" in its name and for fundraising purposes at all times since the Foundation's founding in 1990. *See*

*Marinangeli v. Lehman*, 32 F. Supp. 2d 1, 10 (D.D.C. 1998) ("In the trademark sense, acquiescence means there is some sort of implied consent to a certain action.").

Furthermore, other allegations in the Complaint confirm that the NRA has known and approved of the use of the NRA's "staff, trademarks, reputation, and other resources to raise funds for the Foundation" since its founding. Compl. ¶ 35; *see also id.* ¶ 39 (alleging that the success of joint fundraising efforts by the NRA and the Foundation "depended and continues to depend on . . . the use of the NRA's name and trademarks"). Accordingly, the NRA's intellectual property claims are implausible and thus foreclosed under Rule 12(b)(6). Counts I through IV should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Foundation respectfully requests that this Court grant the Motion and dismiss the entire Complaint with prejudice.

Dated: February 13, 2026                          Respectfully submitted,

**DLA PIPER LLP**

*/s/ Mary E. Gately*
Mary E. Gately (D.C. Bar No. 419151)
500 Eighth Street NW
Washington, DC 20004
Tel: (202) 799-4507
Fax: (202) 799-5507
mary.gately@dlapiper.com

Christopher Oprison (D.C. Bar No. 489087)
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
Tel: (305) 423-8522
Fax: (305) 657-6366
chris.oprison@dlapiper.com

Meagan D. Self (admitted *pro hac vice*)

1900 N. Pearl Street, Suite 2200
Dallas, TX 75201
Tel: (214) 743-4556
Fax: (972) 813-6254
meagan.self@dlapiper.com

Marie Bussey-Garza
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
Fax: (215) 656-3301
marie.bussey-garza@dlapiper.com

*Attorneys for Defendant The NRA
Foundation, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2026, I caused the foregoing Defendant The NRA Foundation, Inc.'s Motion to Dismiss Plaintiff's Complaint to be electronically filed using the Court's CM/ECF system, which will send notification of such filing to all current counsel of record.

_/s/ Mary E. Gately_
Mary E. Gately