# EXHIBIT 7

# IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DISTRICT OF COLUMBIA**,<br><br>*Plaintiff,*<br><br>v.<br><br>**NRA FOUNDATION, INC.,** *et al.*,<br><br>*Defendants.* | Civil Action No.: 2020 CA 3454 B<br><br>Judge Yvonne Williams |

## **CONSENT JUDGMENT**

This matter is before the Court on the Joint Motion for Entry of Consent Judgment filed by Plaintiff District of Columbia (the "District"), through its Office of the Attorney General ("OAG"), and Defendants NRA Foundation, Inc. (the "Foundation") and National Rifle Association of America (the "NRA") (collectively, "Defendants"). The District and Defendants (the "Parties") each agree to the entry of this Consent Judgment to resolve the District's claims against Defendants in this litigation. Defendants are entering into this Consent Judgment solely for the purpose of settlement, admit no liability, and expressly deny the District's allegations against Defendants. The Parties have all agreed to the relief set forth in this Consent Judgment and agree to and shall be bound by its requirements.

## RECITALS

1. On August 6, 2020, the District filed a Complaint against Defendants in the Superior Court of the District of Columbia pursuant to the District of Columbia Nonprofit Corporation Act, D.C. Code §§ 29-401.01 to 414.04 and the common law. 2020 CA 3454 B (the "Civil Action"). The District amended the complaint on July 16, 2021, and again on November 9, 2022.

2. The Complaint alleges that the Foundation violated the NCA and the common law through a series of loans, grants, and management fee payments to the NRA on terms that put the NRA's interests ahead of the Foundation's interests. The Complaint further alleges that the NRA's domination of the Foundation caused the Foundation's Board of Trustees to fail in its oversight requirements and its fiduciary duties to the Foundation.

3. Defendants filed answers denying all the District's claims.

4. This Consent Judgment represents the Parties' compromise of disputed claims in the Civil Action. The Foundation and the NRA are entering into the agreement solely for purposes of settlement, and nothing contained in this Consent Judgment should be construed as an admission or concession of any violation of law, rule, or regulation.

5. Subject to the Court's retention of jurisdiction to enforce the terms of this Consent Judgment, this Consent Judgment represents the final adjudication of and resolution of this action such that the above-captioned case will no longer be a pending civil action.

Based upon the Parties' mutual consent, it is hereby **ORDERED** as follows:

* * *

**Board Decision Making**: When the Foundation Board of Trustees ("Board") or any committee makes decisions outside of Foundation Board meetings, the Foundation shall continue to comply with its articles of incorporation and its bylaws. This includes compliance with Article III, § 6 of the bylaws, which allows the Board to create committees and delegate authority to those committees, and requires that each created committee "shall

act only in the intervals between meetings of the Board of Trustees, and shall be subject to the control and direction of the Board of Trustees and shall report to the Board of Trustees as required."

**Board Action Without a Meeting**: When the Foundation Board or a Board committee takes action without a meeting, it shall continue to comply with (1) Art. III, § 7 of the Foundation's bylaws, which requires that the action must be taken "by a writing or writings signed by all of the Trustees or all of the members of such committee and . . . the writing or writings evidencing such action shall be filed with the Secretary of the Foundation and inserted in the permanent records relating to the meeting of the Board Trustees and committees;" or (2) other bylaws or written policies approved by the Foundation Board that would require the Board or Board committee to sign a document explaining actions taken without a meeting.

**Foundation Board and Officer Training:** The Foundation will conduct annual nonprofit compliance training for every person who, at any time during the term of this Consent Judgment, is or becomes a Board member or Officer. The training will be mandatory, and will include relevant state non-profit corporations law, conflicts of interests and related party transactions requirements and corresponding Foundation policies, the terms of any final settlement reached in this litigation, and other governance principles customary among non-profits, as determined by the Foundation. The Foundation will confirm the completion of each annual training during the term of the Consent Judgment.

**Foundation Audit Committee:** Within 180 calendar days of the entry of the Consent Judgment, the Foundation will establish an Audit Committee. Members of the Audit Committee shall receive no compensation or remuneration from the Foundation or the NRA while serving on the Audit Committee and shall not have any relationship that would interfere with the exercise of his or her independent judgment as a member of the Committee.

The Foundation Audit Committee's functions will include:

a. conferring at least annually with the Foundation's auditor regarding the Foundation's audited financial statements to satisfy the Foundation Audit Committee that the Foundation's financial affairs are in order; and

b. reviewing the performance of the external auditors and deciding, in consultation with the NRA Audit Committee, whether to recommend that the Board appoint, retain, or discharge the external auditor; and

c. reviewing the auditor's report and deciding whether to accept the conclusions in the report.

**Conflict-of-Interest Policy**: Within 180 calendar days of the entry of the Consent Judgment, the Foundation will approve, and thereafter comply with, a new conflict-of-interest policy that contains the following provisions:

a. The policy will apply to all conflict-of-interest transactions within the meaning of D.C. Code § 29-406.70(a), which, for avoidance of doubt, would include any loans made to the NRA above $250,000;

b. Each Foundation Trustee, Officer, and member of a committee with governing powers must submit to the Foundation and its Officers annually a written disclosure of organizations (1) for which the Trustee, Officer, or committee member has an ownership interest or operates as a director or manager; and (2) which the Foundation has or does business;

c. Each Foundation Trustee, Officer, and member of a committee with governing powers must annually sign a statement affirming that he or she has received a copy of the conflict-of-interest policy and training on the policy;

d. Any Foundation Trustee, Officer, or committee member, upon learning that she or he has a potential conflict of interest in a conflicted interest transaction, must inform the Board (or its Audit Committee) of the potential conflict, and provide all facts necessary for the Board (or its Audit Committee) to understand the nature and scope of the potential conflict and determine appropriate action to be taken, if any;

e. The Board or designated committee will vote on the transaction consistent with the requirements of D.C. Code § 29-406.70;

f. The full Foundation Board or designated committee (excluding conflicted members) will review each of the Foundation's conflict of interest transactions and determine whether to authorize a transaction as fair, reasonable, and in the best interests of the Foundation; and

g. If the Board or designated committee authorizes, in its sole discretion and exercise of business judgment, a conflicting interest transaction, the relevant decision-making body (e.g., the full Board excluding conflicted members) must document the basis of its decision in writing.

**Foundation Grantmaking to the NRA**: Within 180 calendar days of entry of the Consent Judgment, the Foundation will adopt, and thereafter comply with, a policy for its grantmaking to the NRA, which requires:

a. <u>Written Grant Applications</u>: Prior to disbursing grant funds to the NRA, the Foundation will require the NRA to submit a request for grant funding to the Foundation, which will contain 1) a list of all programs to be funded; and 2) a proposed Grant Budget reflecting the total amount of grant funding sought by the NRA for each program.

b. <u>Written Grant Agreement</u>: Upon approval of an NRA grant request by the Foundation, the grant funds may be distributed to the NRA upon execution of a written grant agreement between the Foundation and the NRA, subject to the following:

      i. The Grant Agreement will attach the Grant Budget approved by the Foundation Board (or grant committee) as to each NRA program.
     ii. The NRA will provide the Foundation Board post-grant reporting that describes the programs conducted and how Foundation funds were used.
    iii. The NRA's use of grant funds must be limited to the NRA programs described in the written grant application(s) absent a separate written request from the NRA and approval by the Foundation Board or grant committee.
    iv. The NRA may not use grant funds for activities restricted by section 501(c)(3), including for lobbying activity that would be impermissible for a 501(c)(3) organization.
     v. The NRA must return to the Foundation any grant funds that it does not utilize for the purposes set forth in the agreement.
    vi. The NRA must sign the agreement.

c. <u>Foundation Staff</u>: The Foundation staff will approve all qualifying 501(c)(3) expenses for each NRA program up to the amount budgeted by the Foundation Board (or grant committee). The NRA will submit requests to Foundation staff that identify the specific charitable program, expense, or activity and contain supporting documentation demonstrating how the funds were spent. Following each year, the Foundation staff will ensure that such expenses and supporting documentation reconcile to the post-grant reports submitted to the Foundation Board.

d. <u>Review of NRA's Use of Foundation Grant Funds</u>: At least annually, the Foundation will conduct a review of the NRA's use of all Foundation's grant funds in order to gain reasonable assurance that the funds are being used consistent with the written grant agreement. Any funds not used consistent with the written grant agreement will be returned to the Foundation.

e. <u>Right to Reject NRA Grant Requests</u>: The Foundation Board retains the right to reject an application for grant funding by the NRA.

**Foundation's Shared Services Agreement With the NRA**: Within 180 calendar days of entry of the Consent Judgment, the Foundation Board will enter into, and thereafter comply with, a new Shared Services Agreement with the NRA that will be subject to approval by the Foundation Board and NRA. A Shared Services Agreement is an agreement by which the Foundation agrees to pay the NRA for services the NRA provides to the Foundation. The new agreement will contain the following requirements:

a. Specify categories of services the Foundation and the NRA may share (e.g., salaries for NRA employees who provide services to the Foundation, rent for office space the Foundation uses within NRA headquarters, office supplies, information technology and support, and equipment).

b. Specify in writing the method for allocating costs to the Foundation for each category of services set forth above. Such methods shall be consistent with the

        sources cited by William Klimon in his September 1, 2022 rebuttal report at § IV(B).

   c.  If the Foundation pays rent to the NRA for office space, require the Foundation to enter into a written lease with the NRA that sets forth: 1) the monthly payment, 2) a general description of the area the Foundation occupies under the lease agreement, 3) the term of the agreement, and 4) services and utilities to be provided by the NRA under the agreement.

The Foundation must review the Shared Services Agreement every two years and may amend it consistent with the Consent Judgment.

**Foundation Loans to the NRA**: Within 180 calendar days of entry of the Consent Judgment, the Foundation will adopt, and thereafter comply with, a written policy governing any future loans from the Foundation to the NRA of $250,000 or above. The written policy will contain the following requirements:

   a.  The Foundation Board must review and authorize the loan of any money or property to the NRA, or amendment of any loan agreement with the NRA, pursuant to the Foundation's conflict-of-interest policy.

   b.  Any loan agreement shall include a provision requiring the NRA to certify at the time of repayment of the loan that the NRA did not use the loaned funds for any lobbying or political campaign activities.

   c.  The Foundation Board or designated committee will document, contemporaneously with approval of the loan, in writing its basis for a decision to approve any loan of money or property to the NRA.

The Foundation shall not lend any money or property of $250,000 or more to the NRA until the Foundation Board adopts the above-described written policy.

**Organizational Documents**: No terms in the Consent Judgment shall be construed to limit the Foundation's ability to amend its Articles, Bylaws, or other organizational documents, so long as the amendments are consistent with the terms of this Consent Judgment and are approved in a manner consistent with the Foundation's governing documents and applicable law.

**Term of the Agreement**: The Consent Judgment will remain in effect until December 31, 2026, provided that, by no later than August 15, 2024, the Foundation has confirmed in writing to the Office of the Attorney General for the District of Columbia that it has (1) created the Audit Committee as required above; (2) approved a Conflict of Interest policy, Grantmaking policy, and Loan policy as required above, attaching copies of each; and (3) entered the new Shared Services Agreement required above, attaching a copy thereof. However, if the Foundation fails to provide such items on or before August 15, 2024, the Consent Judgment term will end on April 30, 2027.

6. **Reports to the Office of the Attorney General for the District of Columbia**: Through and including the term of this Consent Judgment, the Foundation will send copies to the Office of the Attorney General for the District of Columbia of any policies it develops and approves under the Consent Judgment, or any amendment of any such policy, within 30 days of the approval of such policy. All policies shall be delivered via email to the attention of: Adam Gitlin (adam.gitlin@dc.gov); Cara Spencer (cara.spencer@dc.gov); and Amanda Bangle (amanda.bangle@dc.gov).

7. **Failure to Comply:** In the event any Defendant fails to comply with any term of this Order, the District reserves the right to file a motion with the Court to direct the relevant Defendant(s) to comply with the terms of this Order. The District reserves the right to seek any and all relief to which it may be entitled under the law for Defendants' failure to comply. Defendants reserve the right to challenge and/or oppose the District's motion or other filing. Defendants further reserve the right to seek any and all relief to which they may be entitled under the law in response to the District's motion or other filing.

8. **Tax Laws:** Nothing in any provision of this Consent Judgment constitutes an agreement or concession by the District concerning the characterization of the Consent Judgment for purposes of the District's tax laws.

9. **Resolution of the District's Claims:** This Consent Judgment resolves and releases all of the District's claims against the Foundation, the NRA, and past and present officers, trustees, employees, representatives, agents, affiliates, parent, successors, and assigns (collectively, the "Releasees") for the violations alleged in the District's Second Amended Complaint. This Order further resolves any statutory or common law claims the District could have raised related to or

arising from the transactions or occurrences alleged in the District's complaints as of the Effective Date of this Consent Judgment.

10. **Final Judgment:** This Consent Judgment is final and enforceable as to the Parties, who relinquish any right to appeal the terms of this Consent Judgment.

11. **Entire Agreement:** This Consent Judgment represents the full and complete terms of the settlement entered by the Parties. In any action undertaken by the Parties, neither prior versions of this Consent Judgment nor prior versions of any of its terms that were not entered by the Court in this Consent Judgment may be introduced for any purpose whatsoever.

12. **Jurisdiction:** The Court retains jurisdiction solely to enforce the terms of this Consent Judgment and resolve any disputes regarding any non-compliance with this Consent Judgment. The Parties agree that the laws of the District of Columbia govern the interpretation and enforcement of the terms of this Consent Judgment.

13. **Counterparts:** This Consent Judgment may be executed in counterparts and a pdf signature shall be deemed to be, and shall have the same force and effect as, and original signature.

Consented to by:

_Jennifer C. Jones_  4-17-2024
Jennifer Jones, Deputy, Public Advocacy Division, Office of the Attorney General
On behalf of the District of Columbia

_[signature]_  4/16/2024
Andrew Arulanandam, Interim Executive Vice President
On behalf of the National Rifle Association of America

Thomas H. King          04/17/2024
Tom King, President
On behalf of the NRA Foundation, Inc.

                     **SO ORDERED** this 22nd day of April, 2024.

                     Judge Yvonne Williams

9