**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., WILLIAM BACHENBERG, and DOUGLAS HAMLIN, | Case No.: 1:26-cv-00015 (SLS) |
| Plaintiffs, | **ORAL HEARING REQUESTED** |
| v. | |
| THE NRA FOUNDATION, INC., | |
| Defendant. | |

**PLAINTIFFS NATIONAL RIFLE ASSOCIATION OF AMERICA'S,**
**WILLIAM BACHENBERG'S, AND DOUGLAS HAMLIN'S**
**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
<u>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

Plaintiffs National Rifle Association of America, Inc. ("NRA"), William Bachenberg, and

Douglas Hamlin, (collectively "Plaintiffs"), by and through their attorneys, hereby submit this

statement of points and authorities in support of their motion for partial summary judgment against

Defendant on Count XII of the Amended Complaint.

A statement pursuant to Rule 7(h) is attached hereto.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

LEGAL STANDARD............................................................................................................... 5

ARGUMENT ........................................................................................................................... 5

I.      The Challenged Amendments Are Void Because the NRA Never Approved Them ......... 6

      A.    The Challenged Amendments Require the NRA Board's Approval ......................... 6

      B.    The Amendments Without the NRA Board's Approval Are Void ......................... 10

II.     The Challenged Amendments Were Undertaken in Violation of the Foundation's Articles of Incorporation ....................................................................................................... 11

III.    The Foundation's Desperate "Ratification" Cured Nothing............................................ 12

IV.    The Plaintiffs Have Standing to Challenge the Amendments ........................................ 14

      A.    Hamlin and Bachenberg Have Director Standing to Challenge All Amendments Under Section 29-403.04 .................................................................................. 14

      B.    Plaintiff Hamlin Has Standing Under Section 29-401.22 ...................................... 16

      C.    Plaintiff Bachenberg Has Standing Under Section 29-401.22 and as an NRA Director ...................................................................................................... 16

      D.    The NRA Has Standing as a Designated Body........................................................ 18

V.      The Challenged Amendments Should Be Permanently Enjoined ................................... 18

CONCLUSION........................................................................................................................ 21

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Anatol Zukerman & Charles Krause Reporting, LLC* v. United States Postal Serv.,
    64 F.4th 1354 (D.C. Cir. 2023) ................................................................................. 20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................... 5

*Bd. of Directors, Washington City Orphan Asylum v. Bd. of Trs., Washington City Orphan Asylum*,
    798 A.2d 1068 (D.C. 2002) ...................................................................................... 15

*Bronner v. Duggan*,
    249 F. Supp. 3d 27 (D.D.C. 2017) ........................................................................... 16

*CarrAmerica Realty Corp. v. Kaidanow*,
    321 F.3d 165 (D.C. Cir. 2003) ................................................................................. 12

*Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*,
    751 F. Supp. 218 (D.D.C. 1990) .............................................................................. 20

*Compton v. Alpha Kappa Alpha Sorority, Inc.*,
    64 F. Supp. 3d 1 (D.D.C. 2014) ............................................................................... 10

*Compton v. Alpha Kappa Alpha Sorority, Inc.*,
    80 F. Supp. 3d 23 (D.D.C. 2015) ............................................................................. 18

*Congress v. Gruenberg*,
    643 F. Supp. 3d 203 (D.D.C. 2022) ........................................................................... 5

*Crown EMAK Partners, LLC v. Kurz*,
    992 A.2d 377 (Del. 2010) ........................................................................... 11, 14, 17

*Daley v. Alpha Kappa Alpha Sorority, Inc.*,
    26 A.3d 723 (D.C. 2011) ..................................................................... 11, 12, 16, 17

*eBay Inc. v. Mercexchange, LLC*,
    547 U.S. 388 (2006) ................................................................................................. 19

*Fam. Fed'n for World Peace v. Hyun Jin Moon*,
    129 A.3d 234 (D.C. 2015) ....................................................................................... 15

*Holcomb v. Powell*,
    433 F.3d 889 (D.C. Cir. 2006) ................................................................................... 5

*In re Sterling Mining Co.*,
    No. 09-20178TLM, 2009 WL 2475302 (Bankr. D. Idaho Aug. 11, 2009) ............... 13

*Keller v. Wilson & Co.*,
    190 A. 115 (Del. 1936) ............................................................................................ 19

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..................................................................................... 20

*LULAC v. Exec. Off. of President*,
  808 F. Supp. 3d 29 (D.D.C. 2025)...................................................................... 20

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ............................................................................................ 19

*Nevins v. Bryan*,
  885 A.2d 233 (Del. Ch.) ..................................................................................... 12

*Olincy v. Merle Norman Cosms.*, Inc.,
  200 Cal. App. 2d 260 (Ct. App. 1962) ............................................................... 11

*Sealey v. Am. Soc. of Hypertension, Inc.*,
  26 A.D.3d 254 (N.Y. Sup. Ct. App. Div. 2006) ................................................ 11

*Susman Godfrey LLP v. Exec. Off. of President*,
  789 F. Supp. 3d 15 (D.D.C. 2025)................................................................. 5, 19

*U.S. Dep't of Just. v. Daniel Chapter One*,
  89 F. Supp. 3d 132 (D.D.C. 2015)...................................................................... 19

*W. Palm Beach Firefighters' Pension Fund v. Moelis & Co.*,
  311 A.3d 809 (Del. Ch. 2024) ............................................................................ 18

*W & T Travel Servs. v. Priority One Servs.*,
  69 F. Supp. 3d 158 (D.D.C. 2014)........................................................................ 5

**Statutes**

D.C. Code § 29-401.02(8).......................................................................................... 6

D.C. Code § 29-401.02(24)................................................................................... 7, 8, 9

D.C. Code § 29-401.02(26)...................................................................................... 9, 18

D.C. Code § 29-401.22 ......................................................................................... 16, 17

D.C. Code § 29-403.02 ............................................................................................... 18

D.C. Code § 29-403.04 .........................................................................................Passim

D.C. Code § 29-406.01 ............................................................................................... 18

D.C. Code § 29-406.04 ........................................................................................... 7, 18

D.C. Code § 29-406.12 ..................................................................................... 6, 7, 8, 18

D.C. Code § 29-408.22 ....................................................................................... 8, 9, 10

D.C. Code § 29-411.02 ............................................................................................... 16

D.C. Code § 29-411.01 ............................................................................................... 16

**Rules**

Fed. R. Civ. P. 17(a) .................................................................................................. 18

iv

Fed. R. Civ. P. 56(a) ................................................................................................... 5

**Other Authorities**

2A Fletcher Cyc. Corp. § 755 ...................................................................................... 13

7A Fletcher Cyc. Corp. § 3399 .................................................................................... 11

10 Fletcher Cyc. Corp. § 4854 .................................................................................... 19

**INTRODUCTION**

Plaintiffs seek partial summary judgment on the lawfulness of the Foundation's attempt to amend its bylaws and articles of incorporation to separate itself from its creator, the NRA. The NRA created the Foundation in 1990 to receive tax-exempt contributions to support the extensive charitable activities carried out by the NRA, which is a nonprofit but not a charity. Since that time, the NRA maintained control over the Foundation, as is typical, through control of its board— specifically, through the NRA Board's power to appoint Foundation trustees directly and to select NRA officers entitled to serve as *ex officio* trustees on the Foundation's board. That structure fostered close and fruitful collaboration between the organizations in furtherance of their missions and also provided accountability to NRA's membership through the selection of the Foundation's trustees by member-elected NRA directors.

After more than 30 years of successful collaboration, the Foundation's current leaders now seek to sever its relationship with the NRA and the NRA membership. After NRA's members voted their faction out of leadership of the NRA following a series of scandals, the Foundation's leaders leapt into action to entrench their control of the Foundation. In a series of amendments, they sought to strip the NRA's board of its power to appoint Foundation trustees and make the Foundation's board self-perpetuating, to eliminate the NRA Executive Vice President's *ex officio* status on the Foundation board, to eliminate the NRA President's *ex officio* voting rights, to end the requirement that a majority of Foundation trustees be NRA directors, and ultimately to free the Foundation from accountability to the NRA membership. That was only their first step in a broader campaign to transform the Foundation into a competitor to the NRA, divert funds raised to support the NRA's charitable activities to their own ends, overtake the NRA, and attempt to regain the power and prestige they lost when NRA members removed them from control of the NRA.

1

But that first step was unlawful, for reasons that include the two pressed in this motion.[1] *First*, it is crystal clear under District of Columbia law that the Foundation could not eliminate the NRA's rights without the NRA's approval. And the NRA has never approved the Foundation's attempt to sell NRA members down the river to further the personal ambitions of the Foundation's current leaders. It didn't approve in 2024, when the Foundation purported to adopt the amendments, and it doesn't approve in 2026, when the Foundation scrambled in response to this lawsuit to ratify actions that it has never had the right to take. *Second*, the Foundation board's actions were undertaken in violation of its article of incorporation, which set strict limitations on the board's size that the Foundation inexplicably disregarded. For each of these reasons, the attempted amendments are void, and they should be declared as such and enjoined.

Plaintiffs file this motion at this time with the aim of bringing this dispute to a timely resolution. The arguments pressed herein are premised on undisputed facts regarding the Foundation's (attempted) corporate actions and accordingly present pure questions of law suitable for determination by the Court. Although Plaintiffs' other claims may not rise or fall on the same grounds as this one, as a practical matter the Court's determination that the Foundation's attempted amendments were unlawful is likely to bring this litigation to a quick end, because such a determination would confirm that the NRA retains its historic control over the composition of the Foundation's board. And if the NRA could resume its historic relationship with the Foundation, it and the Foundation would have both the incentive and means to resolve their broader dispute. In short, deciding this motion at this time stands to substantially advance judicial and party economy, while allowing the NRA and Foundation to focus on their important public-interest activities.

---

[1] Plaintiffs alleged additional bases for relief under Count XII, including lack of legally effective notice, that they do not press in this motion and reserve for future motions practice or trial, as may be necessary.

2

Accordingly, Plaintiffs respectfully request that the Court enter summary judgment in its favor on Count XII of the First Amended Complaint.

**BACKGROUND**

A statement pursuant to Rule 7(h) is attached hereto.

The NRA created the Foundation as a vehicle by which donors could make tax-deductible contributions in support of the NRA's charitable, educational, and scientific activities connected with the lawful ownership and use of firearms, as well as its financial support of mission-aligned local nonprofit organizations. MTD Ex. 2, ECF No. 20-3 at 11. To that end, the NRA acted to establish the Foundation. *See* MTD Exs. 1-3. The NRA caused the Foundation to be incorporated, its Articles of Incorporation to be drafted, and its application for tax exemption to be submitted and prosecuted. *Id*.

As is typical for supporting foundations, the NRA maintained control over the Foundation through its board. From the very beginning, the Foundation's trustees, who comprise its board, were selected by the NRA's Board or were NRA officers serving in *ex officio* capacity. The Foundation's Bylaws provided that the NRA's Executive Vice President (in effect, the NRA's CEO) "shall be a Trustee of the Foundation," that non-*ex officio* trustees "shall be elected by the Board of Directors of the National Rifle Association ('NRA') at the Annual Meeting of the Directors of the NRA," that "the majority of the members of the Board of Trustees of the Foundation shall be Directors of the NRA," and that the "remaining members of the Board of Trustees of the Foundation shall be persons who are members of the NRA." Statement of Undisputed Material Facts ¶¶ 4–5 ("SOF"); MTD Ex. 2, ECF No. 20-3 at 20 (1990 Bylaws). A subsequent amendment provided that the NRA's President serve as an *ex officio* member of the

3

Foundation's board with full powers. SOF ¶ 7; Ex. A at 3 (2014 Bylaws).[2] These provisions remained in force without dispute into 2024.

That was the year that a reform movement of NRA members and directors finally succeeded in defeating the "Old Guard" leadership of the organization—allies of former NRA leader Wayne LaPierre, whose financial misconduct and erratic leadership injured the organization and distracted it from its core mission. Reform-oriented directors succeeded in defeating the Old Guard candidate for NRA Executive Vice President (effectively the NRA's CEO) and electing one of their own, Douglas Hamlin. SOF ¶ 14; Bachenberg Decl. ¶ 5. The next year, the reformers continued to increase their numbers on the NRA's board and managed to elect their candidate, Bill Bachenberg, as NRA President (effectively the NRA's board chairman). SOF ¶ 16; Bachenberg Decl. ¶ 1.

At the time of Hamlin's victory, the majority of the Foundation's board, including its Chair, was comprised of members of the Old Guard, including some of LaPierre's closest allies. With their faction having lost control of the NRA's board, these members acted to entrench their control of the Foundation by severing its historic relationship with the NRA. To that end, the Foundation's board held a special meeting on August 23, 2024 to adopt sweeping amendments to the Foundation's bylaws and articles of incorporation. *See* Ex. B (redline changes), Ex. C (minutes) These amendments sought to (1) eliminate the NRA Board's right to appoint trustees and make the Foundation's board self-perpetuating; (2) remove the requirement that a majority of trustees be NRA directors; (3) remove the *ex officio* trustee status of the NRA Executive Vice President; and (4) strip the voting power of the NRA President (collectively, the "Challenged Amendments"). Ex. B.

---

[2] Lettered exhibits are exhibits to the simultaneously filed Declaration of Andrew M. Grossman.

Count XII of the  First Amendment Complaint challenges these amendments, alleging that they violate District of Columbia law and the Foundation's governing documents and are therefore ultra vires and void. ECF No. 19, at ¶¶ 224–30. The NRA now moves for partial summary judgment on aspects of this claim. *See supra* n.1.

## LEGAL STANDARD

The Court may grant summary judgment on any claim or any "part" of a claim. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a 'material' fact." *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 215 (D.D.C. 2022) (quoting Fed. R. Civ. P. 56(a)). A material fact is one that could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only if "the evidence" is such that a reasonable factfinder could "return a verdict for the nonmoving party." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson*, 477 U.S. at 247–48). When, as here, the only disputes on the merits of a claim are legal in nature, that claim "is 'particularly amenable to resolution on summary judgment' because all that remains is the application of law." *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 35 (D.D.C. 2025) (quoting *W & T Travel Servs. v. Priority One Servs.*, 69 F. Supp. 3d 158, 164 (D.D.C. 2014)).

## ARGUMENT

The Challenged Amendments are void because the Foundation's board was powerless to enact them, for two reasons pressed here. First, under D.C. law and the Foundation's governing documents, the Foundation's board lacked authority to strip the NRA of its rights to appoint trustees, either directly or through *ex officio* status, without the NRA's approval. Second, at the

5

time of the August 2024 meeting, the Foundation's board was unlawfully constituted in violation of the limitation on the number of trustees imposed by the Foundation's articles of incorporation. The Foundation's recent scramble to "ratify" these void actions is legally ineffective and only confirms that they were defective from the outset. And the Foundation's attack on the Plaintiffs' standing runs headfirst into District of Columbia statutory law expressly authorizing persons in Plaintiffs' shoes to file suit and case law recognizing the validity—or even necessity—of such claims to hold rogue corporate bodies like the Foundation's board to account.

**I.      The Challenged Amendments Are Void Because the NRA Never Approved Them**

        **A.      The Challenged Amendments Require the NRA Board's Approval**

By vesting the NRA Board with the right to select members of the Foundation's board, the Foundation's governing documents made the NRA Board a "designated body" under D.C. law whose approval is required to alter those rights.

Under the District's Nonprofit Corporations Act, a designated body is an entity "vested by the articles of incorporation or bylaws with powers that, if not vested by the articles or bylaws in that person or group, would be required by this chapter to be exercised by the board or the members." D.C. Code § 29-401.02(8). The Act authorizes nonprofit corporations to vest certain governance "powers, authority, or functions" that would otherwise be vested in the nonprofit corporation's board of directors in an external "designated body." D.C. Code § 29-406.12(a). Similarly, nonprofit corporations may vest certain governance "rights or obligations of the members" in the designated body. *Id*. § 29-406.12(b).

The Foundation's articles and bylaws render the NRA's Board of Directors a designated body twice over. *First*, the D.C. Code vests the power to elect directors in the members of a membership corporation as the default rule, § 29-406.04(a), and the Foundation's Bylaws vested that power in the NRA Board of Directors, pursuant to D.C. Code § 29-406.12. Ex. A at 3 (2014

Bylaws); cf. 1990 Bylaws Article III, Section 1(C); MTD Ex. 2, ECF 20-3 at 19. *Second*, the Foundation's Bylaws gave the NRA Board the power to appoint individuals as directors of the Foundation by virtue of selecting the NRA Executive Vice President and NRA President who serve *ex officio* on the Foundation's board of directors. Ex. A at 3 (2014 Bylaws); *compare* D.C. Code § 29-406.04 (default rule placing appointment power of Foundation's directors in Foundation's members) *with* 1990 Bylaws Article III, Section 1(D) (overriding default rule to vest appointment power in NRA's Board of Directors regarding the NRA Executive Vice President who serves *ex officio* on Foundation's board) *and* 2014 Bylaws Article III, Section 1(D) (vesting in the NRA's board the power to appoint both the Executive Vice President and President of the NRA to the Foundation's Board). Because these appointment rights would ordinarily by default be vested in a corporation's members or directors, the vesting of them in the NRA Board makes it a designated body.

As a designated body, the NRA Board, and its members, have the same rights as directors or members[3] of the corporation. Specifically, they are subject to "[t]he rights, duties, and liabilities of the board of directors or directors individually," and "[m]eetings, notice, and the manner of acting of the board of directors shall also apply to the designated body." *Id*. § 29-406.12(a). Likewise, "[t]he rights and obligations of members shall also apply to the designated body and to the members of the designated body individually," and "[m]eetings, notice, and the manner of acting of members shall also apply to the designated body." *Id*. § 29-406.12(b).

---

[3] Members of a nonprofit corporation are akin to the shareholders of a for-profit corporation, in that they both have the power to appoint the board. *See* D.C. Code § 29-401.02(24). The primary difference is that, unlike a shareholder, a member has no economic right to the earnings of the nonprofit corporation.

Whether the Foundation is viewed as a membership or a nonmembership corporation under the Act—which is addressed below—the NRA Board's approval was required to alter its rights as a designated body. For a membership corporation, Section 29-408.22—titled "Bylaw amendments requiring member approval"—requires member approval for bylaw amendments made under "Section 29-406.12," which is the provision authorizing a corporation to vest rights in a designated body and giving such a designated body and its members the rights of directors and members. D.C. Code § 29-408.22(a)(7). The Challenged Amendments clearly implicate that provision, because they alter rights (regarding the appointment of trustees and powers of those trustees) vested in the NRA Board as a designated body. In addition, Section 29-408.22(a)(1) requires member approval for bylaw amendments made under "Section 29-404.10 providing that some of the members have different rights or obligations than other members with respect to voting, dissolution, transfer of memberships or other matters." The Challenged Amendments implicate that provision because they alter bylaws vesting the NRA Board with appointment rights not provided to other members.[4]

The result is the same if the Foundation is viewed as a nonmembership corporation under the Act. Section 29-406.12(b) provides that, when a designated body is vested with any member rights under the Act, the Acts provisions governing "[t]he rights and obligations of members shall also apply to the designated body and to the members of the designated body individually." The Act defines member rights to include those the Foundation vested in the NRA Board: "the right…to select or vote for the election of directors." D.C. Code § 29-401.02(24)(A). Accordingly, by operation of Section 29-406.12(b), the NRA Board and its members enjoy the rights provided

---

[4] As discussed below, the Foundation's articles of incorporation establish other classes of members.

by the Act to members, including the provisions of Section 29-408.22 that, as described in the preceding paragraph, require member approval for amendments that affect member rights.

Although it is not necessary to reach the issue, the best view is that the Foundation is a membership corporation. A nonprofit corporation the bylaws or articles of which "provide that it must have members" is a membership corporation. D.C. Code § 29-401.02(26). This is true of the Foundation. The Foundation's Articles of Incorporation and Bylaws create four member classes.

*First*, the Foundation's directors are members because the Articles of Incorporation definitively created the Foundation as a membership corporation under the D.C. Code. Article VIII states: "For the purposes of any statute or rule of law relating to corporations, the Directors ('Trustees') shall be taken to be the members of the Foundation." SOF ¶ 1; MTD Ex. 1, ECF No. 20-2 at 4. The trustees are, therefore, a membership class.

*Second*, the NRA Board, as a designated body of the Foundation, has a distinct membership class. As described above, when a corporation gives the rights of members—here, selection of directors—to a designated body, that body is a "member." The NRA Board "has the right…in accordance with the [Foundation] bylaws…to select or vote for the election of [Foundation] directors" pursuant to the NRA Board Appointment Bylaw. D.C. Code § 29-401.02(24). By so doing, the Foundation created a designated body membership class for purposes of selecting Foundation directors and vested it in the NRA Board.

*Third*, for the same reason, NRA directors are also individual members by virtue of their right to appoint Foundation trustees by making appointments to NRA offices with *ex officio* status on the Foundation's board. The NRA Board has the power under the NRA's bylaws to elect the NRA officers, two of whom, the President and Executive Vice President, are *ex officio* Foundation trustees under the Foundation's bylaws.

9

*Fourth*, members of the State Committees are members of the Foundation for purposes of charitable gaming and charitable giving. The Foundation's Bylaws state that, for purposes of "any statute, ordinance, regulation, or other rule of law relating to charitable gaming," the members of the individual State Fund Committees are members of the Foundation. 2014 Bylaws Article II; Purported 2024 Bylaws Article II. The 2024 attempted amendments specified that such members are members for purposes of laws about "charitable … giving" as well.

Accordingly, the Foundation is a membership organization, and the approval requirement of Section 29-408.22(a) therefore applies—as it likewise would were the Foundation a nonmembership organization.

**B.    The Amendments Without the NRA Board's Approval Are Void**

The Foundation's amendments in violation of these laws are ultra vires and void. D.C.'s ultra vires statute, D.C. Code § 29-403.04, provides that the power of a nonprofit corporation to act may be challenged in court by a "member, director, or member of a designated body against the corporation to enjoin the act." Under D.C. law, the definition of ultra vires is broad, encompassing all actions "expressly prohibited by statute," actions "expressly prohibited … by by-law," and actions taken in violation of the powers conferred in the articles of incorporation. *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F. Supp. 3d 1, 18 (D.D.C. 2014), *aff'd*, 639 F. App'x 3 (D.C. Cir. 2016). When a board takes actions such as the revocation of a membership in violation of its bylaws, such an action is ultra vires and void. *Id*. at 19.

For the reasons stated above, the 2024 amendments were expressly prohibited by the Foundation's articles, bylaws, and the D.C. Nonprofit Corporations Act. The NRA Board never gave its approval. SOF ¶ 22; Bachenberg Decl. ¶ 6. The attempt to amend the bylaws to divest the NRA Board of its appointment powers as a designated body violated D.C. Code § 29-408.22(a). For these reasons, the court is empowered to enjoin the 2024 bylaw amendments as ultra vires.

10

## II.    The Challenged Amendments Were Undertaken in Violation of the Foundation's Articles of Incorporation

The Challenged Amendments were all undertaken in violation of the Foundation's Articles of Incorporation because the Foundation's board was unlawfully structured with more trustees than authorized. This also renders the Challenged Amendments void.

The Foundation's Articles of Incorporation state at Article X: "The number of Directors ('Trustees') may be increased or decreased but may not be fewer than seven (7) or more than nine (9)." SOF ¶ 2; MTD Ex. 1, ECF No. 20-2 at 4.[5] But the Challenged Amendments were voted on by more than nine alleged Trustees, according to the minutes of the special meeting. Ex. C. Given the limitation, the Foundation's board was therefore improperly constituted.

Bylaw amendments undertaken in violation of the Articles of Incorporation are void ab initio. It was "expressly prohibited" that the number of directors exceed nine, and so actions taken in violation of that express prohibition are "ultra vires" under D.C. law. *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 731 (D.C. 2011) (citing 7A Fletcher Cyc. Corp. § 3399 (2006)). Courts regularly hold that bylaw amendment votes and other corporate actions taken by an illegally constituted "board" are "null and void." *E.g.*, *Sealey v. Am. Soc. of Hypertension, Inc.,* 26 A.D.3d 254, 255 (N.Y. Sup. Ct. App. Div. 2006); *Olincy v. Merle Norman Cosms.*, Inc., 200 Cal. App. 2d 260, 272–73 (Ct. App. 1962). Delaware law, which D.C. courts often consult on questions of corporate law, recognizes that a properly constituted board with a specific number of directors required by bylaw is mandatory, not a mere procedural requirement, such that bylaw amendments illegally constituting a board are void. *See Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377,

---

[5] The Foundation's board purported to amend this requirement to increase the authorized number of trustees, Ex. D, but that amendment is likewise invalid because it was undertaken by an improperly structured board.

11

400–01 (Del. 2010) (reasoning that the illegal board could not simply vote to "ratify" its illegal composition.

Accordingly, because the Challenged Amendments were purportedly "passed" by a board whose composition was "expressly prohibited" by the Foundation's Articles of Incorporation, they are void.

## III.     The Foundation's Desperate "Ratification" Cured Nothing

The Foundation board's mad scramble to ratify its ultra vires acts in the wake of this lawsuit is ineffective. After the NRA filed this action in January, the Foundation apparently recognized the vulnerability of the Challenged Amendments and rushed to "ratify" them. MTD Ex. 10. A document attached to the Foundation's motion to dismiss the Amended Complaint states that it is a resolution of the Foundation's board and that the board "ratifies, confirms, and approves in all respects…all actions taken and things done by the Board of Trustees since incorporation and organization…." ECF No. 20-11 at 2.

Ultra vires amendments are void ab initio and cannot be ratified. "[O]nly voidable acts [are] open to ratification." *CarrAmerica Realty Corp. v. Kaidanow*, 321 F.3d 165, 171 (D.C. Cir. 2003), supplemented, 331 F.3d 999 (D.C. Cir. 2003) (citing Delaware law). Void acts—meaning "illegal acts or acts beyond the authority of the corporation"—are not ratifiable "because the corporation cannot, in any case, lawfully accomplish them." *Nevins v. Bryan*, 885 A.2d 233, 245 (Del. Ch.), *aff'd*, 884 A.2d 512 (Del. 2005) (quotation omitted). As discussed, under District law, actions taken in violation of the articles of incorporation, corporate bylaws, or D.C. statute are ultra vires, *Daley*, 26 A.3d at 731, and actions by a board constituted in violation of a corporation's governing documents are void, not merely voidable.

Were votes of illegally constituted boards merely voidable and able to be ratified, a corporate board could always wrongfully remove a director or designated body and then overcome

12

the voidness of that act by "ratifying" the wrongful action. For example, if a resolution fails by a few votes, the board could hold a meeting without giving notice to several of the dissenters, vote them off the board by a bare majority, pass the resolution, and then ratify everything. As a practical matter, this would mean that no wrongfully removed director or designated body could ever obtain relief, because any competent corporate counsel would be ready with a ratification to nullify the claim. In short, this theory, if accepted, would defeat all of the D.C. Code's elaborate protections for directors, members, and designated bodies.

Ratification cannot is ineffective here for two additional reasons. First, the "board" itself that did the so-called "ratification" was the very illegally constituted board challenged by this present action. It is axiomatic that "the person (or entity) ratifying the unauthorized act must be one who had authority to do the act in the first place." *In re Sterling Mining Co.*, No. 09-20178TLM, 2009 WL 2475302, at *6 (Bankr. D. Idaho Aug. 11, 2009). Accordingly, if the Foundation "board" was illegally constituted in August 2024, then it remains so in March 2026. Any later purported "ratification" by the same improperly constituted board is just as ineffective as the purported bylaw amendments because a body lacking lawful authority cannot ratify its own ultra vires attempt to exclude the rightful directors and remove the NRA Board power. "Ratification of such an act or contract cannot render it any less ultra vires." 2A Fletcher Cyc. Corp. § 755.

Second, as discussed above, the NRA's approval was required because the NRA Board is a designated body. Accordingly, the attempt to strip the NRA board's designated powers by law still requires the NRA's approval. That approval was not given in 2024, nor was it given in March 2026.

IV.     **The Plaintiffs Have Standing to Challenge the Amendments**

Contrary to the Foundation's motion-to-dismiss argument, the Plaintiffs obviously have standing to challenge amendments seeking to strip them of their rights.

A.     **Hamlin and Bachenberg Have Director Standing to Challenge All Amendments Under Section 29-403.04**

The two individual Plaintiffs, Hamlin and Bachenberg, are directors of the Foundation board by operation of law and therefore have standing to challenge the ultra vires acts under D.C. Code § 29-403.04(b), which authorizes a "member" or "director" to challenge "[t]he power of a nonprofit corporation to act."

Hamlin is the Executive Vice President of the NRA, a role he assumed in May 2024. Bachenberg Decl. ¶ 5. Accordingly, he was entitled to serve as an *ex officio* member of the Foundation's board. Ex. A at 3 (2014 Bylaws). In addition, as discussed above, the Foundation's Articles also establish that Hamlin, as a trustee, became a "member[] of the Foundation" for "purposes of any statute or rule of law relating to corporations." SOF ¶ 7; MTD Ex. 1, ECF No. 20-2 at 4. After Hamlin was elected as the NRA Executive Vice President, the Foundation board purported to adopt the challenged Amendments. MTD Ex. 8 (Challenged Amended Bylaws).

Bachenberg is currently a legally appointed director of the Foundation and also a member. Bachenberg is the President of the NRA, a role he assumed in April 2025. Declaration of William Bachenberg ("Bachenberg Decl.") ¶ 1. Having been elected to that role, he is legally entitled to serve as an *ex officio* member of the Foundation's board. SOF ¶ 7; Ex. A at 3 (2014 Bylaws). The Foundation purported to strip the NRA President's ability to have voting rights on the Foundation's board, and then membership on the board itself. MTD Ex. 8; Ex. B. By operation of law, notwithstanding the unlawful and ineffective amendments, Plaintiff Bachenberg has a "directorship" on the board of the Foundation. *See Crown EMAK Partners, LLC*, 992 A.2d at 400

14

(noting that corporate law recognizes the legal concept of a "directorship" created by law in contrast to "directors actually in office"). Like Hamlin, Bachenberg therefore has standing to sue under Section 29-403.04.

Both Plaintiffs also have standing under the Uniform Trust Code's treatment of "ousted directors" as continuing stewards of charitable trusts. *Fam. Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 245 n.16 (D.C. 2015). The D.C. Court of Appeals has held that ousted directors of a charitable corporation occupy "a status both as the alleged successor trustees to the [] trust and as directors of a charitable corporation akin to a charitable trust." *Id.* at 244. Former directors challenging their own ouster therefore have standing to sue on their own behalf to challenge the misuse of funds. *Bd. of Directors, Washington City Orphan Asylum v. Bd. of Trs., Washington City Orphan Asylum*, 798 A.2d 1068, 1074 (D.C. 2002). When co-trustees are appointed to act as stewards of a trust, "[e]ach trustee shall exercise reasonable care to…[p]revent a co[-]trustee from committing a serious breach of trust; and…[c]ompel a co[-]trustee to redress a serious breach of trust." *Id.*

Because the Foundation functioned as a charitable corporation "akin to a charitable trust," Plaintiffs were vested with the right to be co-trustees along with the other directors of the Foundation's board. They thus have standing—indeed, a legal obligation—to ensure the Foundation does not break the law and divert the funds for other purposes.

It is immaterial that Plaintiffs are challenging their removal as legal directors after the purported vote. A director who is removed may of course challenge the validity of the removal. *See Bd. of Directors, Washington City Orphan*, 798 A.2d at 1070–71. While D.C. law may limit

15

the ability of a wrongfully ousted director to bring a derivative action, D.C. Code § 29-411.02,[6] this case is not such an action.

### B.    Plaintiff Hamlin Has Standing Under Section 29-401.22

Plaintiff Hamlin also has standing to challenge *at least* his own ouster under D.C. Code § 29-401.22(a). That provision authorizes "a person whose status as, or whose rights or duties as, a…member [or] director…of a corporation are or may be affected by any corporate action" to challenge the "validity" of that action. Here, Hamlin, who had *ex officio* status, Ex. A at 3 (2014 Bylaws), can therefore challenge the purported 2024 amendment that removed his *ex officio* director "status." He also has standing on this same basis to challenge the amendment purporting to make the Foundation's board self-perpetuating because it affects his rights or duties as a director or member.

Similarly, D.C. law recognizes that where "the individual rights of the plaintiffs were affected by the alleged failure to follow the dictates of the constitution and by-laws," individual plaintiffs have a "direct, personal interest in the cause of action." *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 729 (D.C. 2011); *accord Bronner v. Duggan*, 249 F. Supp. 3d 27, 47 (D.D.C. 2017). Because Hamlin's individual rights as a director were stripped by the Foundation's action, he has a direct, personal interest in Count XII.

### C.    Plaintiff Bachenberg Has Standing Under Section 29-401.22 and as an NRA Director

Like Hamlin, Bachenberg has standing as an individual to challenge the "validity" of "any corporate action" that affects his "status," rights, or duties as a director of the Foundation. D.C. Code § 29–401.22. The Foundation attempted to strip the NRA President's ability to have voting

---

[6] A "derivative action" is one brought on behalf of the corporation to enforce a corporate claim when the corporation's own managers refuse to do so. *See* D.C. Code § 29-411.01.

rights on the Foundation's board, and then membership on the board itself. MTD Ex. 8 (Challenged Amended Bylaws). Therefore, the President has a "direct, personal interest in the cause of action" challenging the "failure to follow the dictates of the constitution and by-laws." *Daley*, 26 A.3d at 729. He also has standing to challenge the amendments purporting to make the Foundation's board self-perpetuating and to remove the requirement that a majority of trustees be NRA directors because they may affect his rights or duties as a director or member.

The fact that Bachenberg was not elected until 2025 makes no difference. The 2024 amendments purported to strip the office of NRA President of its "status" as an *ex officio* director of the Foundation's Board, which thereby implicated Section 29-401.22. But for that unlawful act, Bachenberg was legally entitled under the Foundation's 2014 bylaws and articles to serve as an *ex officio* member of the Foundation's board. Ex. A at 3 (2014 Bylaws). By operation of law, notwithstanding the unlawful and ineffective amendments, Bachenberg has a "directorship" on the board of the Foundation. *See Crown EMAK Partners, LLC*, 992 A.2d at 400 (noting that corporate law recognizes the legal concept of a "directorship" created by law in contrast to "directors actually in office"). And he therefore has standing under the statute.

Finally, Bachenberg is a member of the NRA Board of Directors and, as such, has standing to challenge all of the Challenged Amendments. *See* D.C. Code § 29-403.04 (providing that a "member of a designated body" may bring ultra vires claim "against the corporation to enjoin the act"); D.C. Code § 29-401.22 (providing that "a person whose status as, or whose rights or duties as, a…member of a designated body, or officer of a corporation are or may be affected by any corporate action" may sue).

### D.      The NRA Has Standing as a Designated Body

As the Foundation's designated body, the NRA Board has the right to challenge the attempted amendments.[7]

As discussed above, the NRA Board is the Foundation's designated body vested with member rights. Accordingly, the NRA Board is entitled to the Nonprofit Corporation Act's protections for members. D.C. Code § 29-406.12(b). The D.C. Code defines a nonprofit "member" as a "person" who has "right, in accordance with the articles of incorporation or bylaws…to select or vote for the election of directors." *Id.* § 29-401.02(24). Because D.C. Code § 29-406.04(a) gives members the default right and duty to select directors, the vesting of that selection power in the NRA Board renders it a member of the Foundation.

And that, in turn, entitles the NRA to challenge the validity of the Challenged Amendments under both Section 29-403.04 and Section 29-401.22.

### V.      The Challenged Amendments Should Be Permanently Enjoined

The Foundation's corporate acts as identified herein should be enjoined pursuant to this Court's authority under D.C. Code § 29-403.04. That is the standard remedy for an ultra vires corporate act. *See, e.g.*, *Compton v. Alpha Kappa Alpha Sorority, Inc*., 80 F. Supp. 3d 23, 27 (D.D.C. 2015), *aff'd*, 639 F. App'x 3 (D.C. Cir. 2016) (recognizing that the "D.C. Code" empowers federal courts to order "injunctive relief" to remedy ultra vires acts and that "the Code does not impair the Court's inherent power, as a court of equity, to order equitable relief"); *W. Palm Beach Firefighters' Pension Fund v. Moelis & Co*., 311 A.3d 809, 822 (Del. Ch. 2024) (noting the

---

[7] The NRA is the real party in interest under Fed. R. Civ. P. 17(a) because it, not the Board, is the corporate entity holding the claims in its own name with "the power to: (1) Sue…in its corporate name." D.C. Code § 29-403.02. Under D.C. Code § 29-406.01, the NRA Board exercises the NRA's corporate powers, but it is the NRA that is the corporate person, real party in interest, and plaintiff. The Board's holds the corporate rights of a designated body on behalf of the corporation.

18

Delaware Supreme Court has affirmed an "injunction against attempt to amend charter" to engage in action that was "null and void") (citing *Keller v. Wilson & Co.*, 190 A. 115, 124–25 (Del. 1936)); *cf.* 10 Fletcher Cyc. Corp. § 4854 et seq. (describing the rights of states, private persons, and corporations, and statutory rights to enjoin ultra vires acts).

Furthermore, the injunction factors favor Plaintiffs. A "plaintiff moving for a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Susman Godfrey LLP*, 789 F. Supp. 3d at 55–56 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court," *eBay Inc. v. Mercexchange, LLC*, 547 U.S. 388, 391 (2006), and accordingly not subject to the Rule 56(a) standard.

**Irreparable Injury and Inadequacy of Legal Damages**. As described above, each Plaintiff is currently harmed by the loss of legal rights under the D.C. Code. The NRA is currently being harmed because its rights as a designated body are being disregarded by the Foundation, and the Foundation's current leadership has acted to injure the NRA in its ability to carry out its public-interest programs, including through funding cuts and threatened funding cuts that require layoffs and destroy program capacity that has been build up over many years. Bachenberg Decl. ¶¶ 10–11. The individual Plaintiffs are both harmed by their wrongful ousters as directors, and they also experience harm because they are currently being prevented from serving as trustees for the Foundation.

19

"Once a violation is demonstrated, all that need be shown is that there is some reasonable likelihood of future violations." *U.S. Dep't of Just. v. Daniel Chapter One*, 89 F. Supp. 3d 132, 143 (D.D.C. 2015), *aff'd*, 650 F. App'x 20 (D.C. Cir. 2016) (quotation marks and citation omitted). These harms against Plaintiffs, which go to the core of the corporate relationship, "cannot be fully compensated by later damages," *Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*, 751 F. Supp. 218, 224 (D.D.C. 1990). Rather, the Foundation must be enjoined from enforcing the unlawful Challenged Amendments going forward. Absent such relief, the Foundation's continued enforcement of those amendments will compound Plaintiffs' injuries. *See Anatol Zukerman & Charles Krause Reporting, LLC* v. United States Postal Serv., 64 F.4th 1354, 1364 (D.C. Cir. 2023) (recognizing that purpose of injunctive relief is to address "some cognizable danger of recurrent violation").

**Balance of Hardships and Public Interest**. Invalidation of the challenged amendments would return the parties to their historic relationship. Considering this was the posture under which the two entities operated for over three decades, this will not cause hardship on the Foundation. On the other hand, the Foundation's ongoing legal violations, if not enjoined, will continue to impose hardship on the Plaintiffs, who have been ousted from their positions as designated body and directors and, as described, are being injured in their ability to carry out public-interest charitable activities.

Finally, "Plaintiffs' success on the merits 'is a strong indicator' that injunctive relief 'would serve the public interest.'" *LULAC v. Exec. Off. of President*, 808 F. Supp. 3d 29, 83 (D.D.C. 2025) (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The public interest will be served because the D.C. Council saw fit to explicitly provide injunctive relief to block ultra vires actions. *See* D.C. Code § 29-403.04. Accordingly, if this Court finds the

20

acts ultra vires, it serves the public interest to follow the policy goals of the Nonprofit Corporations Act. In addition, injunctive relief will further the mission of both organizations to support and carry out the NRA's charitable activities, which operate for the benefit of the general public. *See* MTD Ex. 1, ECF No. 20-2 at 2 (providing, in the Foundation's articles of incorporation, that it "is organized…[t]o support the [charitable] activities of the National Rifle Association of America"); MTD Ex. 2, ECF No. 20-3 at 11–13 (stating to IRS that the Foundation's purpose is to raise funds to support the NRA's charitable activities).

### CONCLUSION

The Court should grant summary judgment to the NRA on Count XII.

April 10, 2026

Respectfully submitted,

*/s/ Andrew M. Grossman*
Andrew M. Grossman (D.C. Bar No. 985166)
Mark W. DeLaquil (D.C. Bar No. 493545)
Mark H. Tidman (D.C. Bar No. 441310)
**BAKER & HOSTETLER LLP**
1050 Connecticut Avenue, Suite 1100
Washington, D.C. 20036
Phone: 202.861.1500
Email: agrossman@bakerlaw.com

*Counsel for Plaintiffs NATIONAL RIFLE ASSOCIATION OF AMERICA, WILLIAM BACHENBERG, and DOUGLAS HAMLIN*

21