**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE NRA FOUNDATION, INC., n/k/a THE 1791 FOUNDATION, INC.,<br><br>Defendant. | ) | Civil Action No. 1:26-cv-00015 (SLS) |

**Joint Status Report**

Plaintiff National Rifle Association of America, Inc. ("NRA") and Defendant The 1791 Foundation, Inc. (the "Foundation") hereby submit this joint status report in response to the Court's Order of September 1, 2026. As relevant here, the Order directed the parties to meet and confer and submit a joint status report "(1) indicating how long the Parties met and conferred and who was present, (2) outlining how the Parties intend to proceed regarding the counterclaims, (3) addressing the import of the Defendant's name change on the nature of the claims, and (4) proposing a discovery schedule."

**1. Meet and Confer**

Attorneys for the parties met by videoconference on September 4, 2026, for approximately 55 minutes to confer over the matters identified by the Court and discuss potential settlement of this action. The NRA was represented in this meeting by Andrew M. Grossman, Mark W. DeLaquil, and Patrick Lewis, and the Foundation was represented by Christopher Oprison, Mary Gately, Keith Medansky, and Caitlin Brydges. The parties further conferred via email on September 3, September 4, and September 8, 2026. The parties met again by videoconference on

September 8, 2026, for approximately 25 minutes. The same attorneys, but for Mr. DeLaquil, attended the second meeting. The parties expect that their settlement discussions will continue over the coming days.

**2. The Foundation's Counterclaims**

The Foundation intends to maintain two counterclaims (each asserted in the alternative to the other), because they are compulsory counterclaims pursuant to Federal Rule of Civil Procedure 13(a). The Foundation originally asserted three counterclaims: unfair competition (Count I); breach of the parties' trademark license agreement entered into on or about February 9, 1998 ("1998 Trademark License") by the NRA's conduct (Count II); and in the alternative to Count II only, breach of the 1998 Trademark License by wrongful termination (Count III). At a minimum Counts II and III are compulsory, because they arise from the same "transaction or occurrence that is the subject matter of" the NRA's claims—that is, the Foundation's alleged unauthorized use of the NRA's trademarks—and the claims have a "logical relationship" to the NRA's claims of trademark infringement. *Pumpelly v. Cook*, 106 F.R.D. 238, 239 (D.D.C. 1985). Counts II and III assert that the NRA either directly breached the still-effective 1998 Trademark License that authorized the Foundation's use of the marks at issue in the NRA's claims or, alternatively, wrongfully terminated that License.

Given the NRA's position that the "Foundation's unfair competition claim is sufficiently divorced from the NRA's allegations and claims about the Foundation's unlawful uses of the NRA's marks that it does not derive from the same common nucleus of operative fact" (ECF 36-1 at 12), the Foundation will, with the Court's permission, dismiss Count I without prejudice to bringing it in D.C. Superior Court.

In response to the Foundation's position, the NRA explained to the Foundation that (as the Court suggested at the initial conference) the Foundation's counterclaims cover similar terrain as the NRA's claims over which the Court declined to exercise supplemental jurisdiction; that, in the NRA's view, the Foundation's unfair competition counterclaim is unsupportable by supplemental jurisdiction; and that the Foundation's counterclaims were otherwise unsupported by law as set forth in the NRA's motion to dismiss. In response, the Foundation agreed to seek dismissal without prejudice of its unfair competition counterclaim. The NRA further noted its intention to file a Rule 12(c) motion for judgment on the pleadings on the same grounds as its previous motion to dismiss the Foundation's counterclaims and asked whether the Foundation would oppose the motion. *See* ECF No. 36. The Foundation responded that it would oppose the motion.

**3. The Defendant's Name Change**

The NRA's position is that the Foundation's name change has two principal effects on this case.

First, the Foundation's name change may provide a basis to settle or moot the NRA's requests for declaratory and prospective relief regarding the Foundation's use of the "NRA" trademark *if* the Foundation abandons its position that it has a perpetual and irrevocable right to use the "NRA" mark. *See* ECF No. 32, at Answer § 41; *id*. at Affirmative Defenses ¶ 3. If the Foundation does not abandon its claim to a perpetual and irrevocable right to use the NRA mark, the NRA must maintain those requests for relief to resolve the live controversy regarding the Foundation's assertion of rights in the "NRA" mark. As of this time, however, the Foundation has not abandoned its claim to a perpetual and irrevocable right to use the "NRA" mark.

Second, the Foundation's name change may limit the scope of the NRA's claim for trademark infringement for use of the NRA's "NRA" mark and other NRA marks previously used by

the Foundation as of the date that the Foundation made such name change. The extent of such limitation depends on whether the Foundations' name change has, in fact, been accompanied by a complete discontinuation in use of the accused marks.

The Foundation's name change does not impact the NRA's backwards-looking damages claims before the date the Foundation discontinued use of the accused marks. In particular, the NRA contends that the Foundation began using the accused marks in 2025 in a manner that was not consented to by the NRA in an effort to divert funding from the NRA to the Foundation. Furthermore, the NRA contends that the Foundation used the accused marks after the January 5, 2026 termination letter in a manner that infringed the NRA's rights in those marks and damaged the NRA. Liability would run until the date that the Foundation discontinued use of the accused marks.

Finally, the Foundation's name changes does not impact the NRA's claims respecting the thenrafoundation.org domain name. The Foundation's name change has not been accompanied by a relinquishment of the right to possess said domain, the Foundation has not transferred the domain to the NRA, and it continues to assert rights in said domain. *See* ECF No. 32, at Affirmative Defenses ¶ 9.

The Foundation explained its position that its name change and the 1998 Trademark License moot the NRA's trademark claims. The Foundation has operated under the auspices of the 1998 Trademark License for the entire period that the NRA now claims infringement. The NRA ostensibly did not know about the 1998 Trademark License until July 22, 2026—the date the Foundation filed its Answer and Counterclaims to the NRA's claims and raised it—and thus could not have properly terminated the 1998 Trademark License at any point prior to that date. The Foundation discontinued use of the "The NRA Foundation" name, except for historical purposes (that is, as an f/k/a designation to acknowledge its previous name and avoid donor confusion), months

before then, as of May 29, 2026, when it changed its name to "The 1791 Foundation." The 1998 Trademark License thus authorized the Foundation's use of the name and the NRA's marks for the entire timeframe where the NRA alleges infringement. In other words, the Foundation has not infringed on the NRA's trademarks, the NRA has no damages, and the NRA's claims are foreclosed.

The NRA also has no basis for injunctive relief because the Foundation has ceased use of the name "The NRA Foundation," except for historical purposes as noted above.

**4. Discovery Schedule**

The Court directed the parties to confer over and propose a discovery schedule of no more than 180 days and a schedule for dispositive motions. The parties' joint proposal is attached as Attachment A.

In addition, the parties have reached agreement on the form of a proposed Stipulated Protective Order to govern confidential documents in the case, which includes a proposed Order from this Court pursuant to Rule 502(d) of the Federal Rules of Evidence. The parties' proposed Stipulated Protective Order is attached as Attachment B.

**BAKER & HOSTETLER LLP**

/s/ *Andrew M. Grossman*
Andrew M. Grossman (D.C. Bar No. 985166)
Mark W. DeLaquil (D.C. Bar No. 493545)
Mark H. Tidman (*pro hac vice*)
1050 Connecticut Ave., N.W., Suite 1050
Washington, D.C. 20036
Phone: 202.861.1500
Email: agrossman@bakerlaw.com
mdelaquil@bakerlaw.com
mtidman@bakerlaw.com

Patrick T. Lewis (*pro hac vice*)
127 Public Square, Suite 2000
Cleveland, OH 44114
Phone: 216.621.0200
Email: plewis@bakerlaw.com

*Counsel for Plaintiff,*
*National Rifle Association of America*

**DLA PIPER LLP**

/s/ *Christopher Oprison*
Christopher Oprison (D.C. Bar No. 489087)
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
Phone: 305.423.8522
Email: chris.oprison@dlapiper.com

Mary E. Gately (D.C. Bar No. 419151)
Jane W. Wise (D.C. Bar No. 1027769)
500 Eighth Street, N.W.
Washington, D.C. 20004
Phone: 202.788.4507
Email: mary.gately@dlapiper.com
jane.wise@dlapiper.com

Meagan D. Self (admitted *pro hac vice*)
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Phone: 214.743.4556
Email: meagan.self@dlapiper.com

Marie Bussey-Garza
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103
Phone: 215.656.3300
Email: marie.bussey-garza@dlapiper.com

*Counsel for Defendant, The 1791 Foundation, Inc., f/k/a The NRA Foundation, Inc.*